**EXHIBIT B-1**

Form 8041

# CONTRACT OF SALE

WARNING: NO REPRESENTATION IS MADE THAT THIS FORM OF CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW ("PLAIN ENGLISH").

## CONSULT YOUR LAWYER BEFORE SIGNING IT.

NOTE: FIRE AND CASUALTY LOSSES: This contract form does not provide for what happens in the event of fire or casualty loss before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part of that law makes a purchaser responsible for fire and casualty loss upon taking of title to or possession of the premises.

**Date:** CONTRACT OF SALE made as of the ~~18th~~ day of ~~October~~, 20 21
November
BETWEEN Veterans Road Holdings, LLC

**Parties:** Address: 362 St. Marks Place, Staten Island, New York 10301
hereinafter called "SELLER," who agrees to sell, and Alpha Equity Group, LLC ,
William Segal or an entity to be formed prior to the end of the due diligence period

Address: 3021 Ave J Brooklyn, NY 1121
hereinafter called "PURCHASER," who agrees to buy

**Premises:** The property, including all buildings and improvements thereon (the "PREMISES") (more fully described on a separate page marked "Schedule A") and also known as:

Street Address:
2925-2965 Veterans Road West Staten Island, NY
Tax Map Designation: Block 7511, Lot(s) 1,75 and 150, Richmond County
Together with SELLER'S interest, if any, in streets and unpaid awards as set forth in Paragraph 9.

**Personal Property:** The sale also includes all fixtures and articles of personal property attached to or used in connection with the PREMISES, unless specifically excluded below. SELLER states that they are paid for and owned by SELLER free and clear of any lien other than the EXISTING MORTGAGE(S). They include but are not limited to plumbing, heating, lighting and cooking fixtures, ~~bathroom and kitchen cabinets, mantels, door mirrors, venetian blinds, shades, screens, awnings, storm windows, window boxes, storm doors, mail boxes, weather vanes, flagpoles, pumps, shrubbery, fencing, outdoor statuary, tool sheds, dishwashers, washing machines, clothes dryers, garbage disposal units, ranges, refrigerators, freezers, air conditioning equipment and installations, and wall-to-wall carpeting.~~

Excluded from this sale are: Furniture and household furnishings, plumbing, heating, lighting and cooking fixtures, bathroom and kitchen cabinets, mantels, door mirrors, venetian blinds, shades, screens, awnings, storm windows, window boxes, storm doors, mail boxes, weather vanes, flagpoles, pumps, shrubbery, fencing, outdoor statuary, tool sheds, dishwashers, washing machines, clothes dryers, garbage disposal units, ranges, refrigerators, freezers, air conditioning equipment and installations, wall-to-wall carpeting.

## Stewart Title Insurance Company

Title Number: ALR 21-2875
Page 1

### SCHEDULE A DESCRIPTION

ALL that certain plot, piece or parcel of land, with buildings and improvements thereon erected, situate, lying and being in the Borough of Staten Island and County of Richmond, City and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the westerly line of Tyrellan Avenue with the southerly line of Veterans Road West and running thence along the said westerly line of Tyrellan Avenue, South 3 degrees 11 minutes 44 seconds West 470.07 feet to a point.

RUNNING THENCE South 85 degrees 57 minutes 30 seconds West, 150.19 feet to a point;

RUNNING THENCE North 86 degrees 59 minutes 02 seconds West 91.37 feet to a point;

RUNNING THENCE along a curve bearing to the right, along a radius 133.00 feet, subtending a central angle of 62 degrees 10 minutes 53 seconds for an arc length 144.34 feet to a point;

RUNNING THENCE North 24 degrees 48 minutes 09 seconds West, 71.62 feet to a point;

RUNNING THENCE along a curve bearing to the left, along a radius 333.00 feet to a point, subtending a central angle of 60 degrees 31 minutes 44 seconds for an arc length of 351.79 feet to a point;

RUNNING THENCE North 85 degrees 19 minutes 53 seconds West 404.99 feet to a point;

RUNNING THENCE North 3 degrees 11 minutes 44 seconds East, 196.33 feet to the southerly line of Veterans Road West;

RUNNING THENCE South 85 degrees 19 minutes 53 seconds East, along the said line of Veterans Road West 1,082.50 feet (1,082.05 feet on the tax map) to the corner of Tyrellan Avenue at the point or place of BEGINNING.

1

**Purchase Price:**

1. a. The purchase price is                                                  $ _____ 47,000,000.00

   Payable as follows:

   On the signing of this contract, by check subject to
   collection:                                                              $ _____ 750,000.00

   Additional deposit paid pursuant to
   Paragraph 2 of Rider                                                      $ _____ 750,000.00

   By a Purchase Money Note and Mortgage from
   Purchaser (or assigns) to SELLER:                                         $ _____ 0.00

   BALANCE AT CLOSING:                                                       $ _____ 45,500,000.00

   b. If this sale is subject to an EXISTING MORTGAGE, the Purchase
   Money Note and Mortgage will also provide that it will remain subject to the
   prior lien of any EXISTING MORTGAGE even though the EXISTING
   MORTGAGE is extended or modified in good faith. The Purchase Money Note
   and Mortgage shall be drawn on the
   standard form by the attorney for SELLER. PURCHASER shall pay the
   mortgage recording tax, recording fees and the attorney's fees in the amount of
   $ _____ for its preparation.

   c. If any required payments are made on an EXISTING MORTGAGE
   between now and CLOSING which reduce the unpaid principal amount of an
   EXISTING MORTGAGE below the amount shown in Paragraph 2, then the
   balance of the price payable at CLOSING will be adjusted. SELLER agrees that
   the amount shown in Paragraph 2 is reasonably correct and that only payments
   required by the EXISTING MORTGAGE will be made.

   d. If there is a mortgage escrow account that is maintained for the purpose
   of paying taxes or insurance, etc., SELLER shall assign it to PURCHASER, if it
   can be assigned. In that event PURCHASER shall pay the amount in the escrow
   account to SELLER at CLOSING.

**Existing Mortgage(s):**

2. The PREMISES will be conveyed subject to the continuing lien of
"EXISTING MORTGAGE(S)" as follows:

   Mortgage now in the unpaid principal amount of $ _____ and
   interest at the rate of _____ percent per year, presently payable in
   installments of $ _____, which include principal, interest, and with
   any balance of principal being due and payable on _____.

   SELLER hereby states that no EXISTING MORTGAGE contains any
   provision that permits the holder of the mortgage to require its immediate
   payment in full or to change any other term thereof by reason of the fact of
   CLOSING.

**Acceptable Funds:**

3. All money payable under this contract, unless otherwise specified, shall be
either:

   a. Cash, but not over one thousand ($1,000.00) Dollars ;

   b. Good certified check of PURCHASER, or official check of any bank,
   savings bank, trust company, or savings and loan association having a banking
   office in the State of New York, payable to the order of SELLER, or to the
   order of PURCHASER and duly endorsed by PURCHASER (if an individual)
   to the order of SELLER in the presence of SELLER or SELLER'S attorney;

   c. Money other than the purchase price, payable to SELLER at
   CLOSING, may be by check of PURCHASER up to the amount of
   _____ One Thousand _____ dollars
   ($1,000.00        ); or

   d. As otherwise agreed to in writing by SELLER or SELLER'S attorney.

   e) wire of funds

*"Subject to"*
*Provisions:*

4. The PREMISES are to be transferred subject to:

    a. Laws and governmental regulations that affect the use and maintenance of the PREMISES, provided that they are not violated by the buildings and improvements erected on the PREMISES.

*Records*
*joining*

    b. Consents for the erection of any structures on, under or above any streets on which the PREMISES abut.

    c. Encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway.

*Title*
*Company*
*Approval:*

5. SELLER shall give and PURCHASER shall accept such title as any New York State licensed title insurance company *Chosen by Purchaser* will be willing to approve and insure in accordance with the standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for in this contract.

*Closing*
*Defined and*
*Form of*
*Deed:*

6. "CLOSING" means the settlement of the obligations of SELLER and PURCHASER to each other under this contract, including the payment of the purchase price to SELLER, and the delivery to PURCHASER of a bargain and sale deed with covenants

deed in proper statutory form for recording so as to transfer full ownership (fee simple title) to the PREMISES, free of all encumbrances except as herein stated. The deed will contain a covenant by SELLER as required by Section 13 of the Lien Law.

    If SELLER is a corporation, it will deliver to PURCHASER at the time of CLOSING (a) a resolution of its Board of Directors authorizing the sale and delivery of the deed; and (b) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law. The deed in such case shall contain a recital sufficient to establish compliance with that section.

*Closing Date*
*and Place:*

7. CLOSING will take place ~~at the office of~~ as per rider

at _____ o'clock on _____, 20_____.

*Broker:*

8. PURCHASER hereby states that PURCHASER has not dealt with any broker in connection with this sale other than ___Cassandra Properties, Inc.___ and SELLER agrees to pay the broker the commission earned thereby (pursuant to separate agreement).

*Streets and*
*Assignment*
*of Unpaid*
*Awards:*

9. This sale includes all of SELLER'S ownership and rights, if any, in any land lying in the bed of any street or highway, opened or proposed, in front of or adjoining the PREMISES to the center line thereof. It also includes any right of SELLER to any unpaid award by reason of any taking by condemnation and/or for any damage to the PREMISES by reason of change of grade of any street or highway. SELLER will deliver at no additional cost to PURCHASER, at CLOSING, or thereafter, on demand, any documents which PURCHASER may require to collect the award and damages.

*Mortgagee's*
*Certificate or*
*Letter as to*
*Existing*
*Mortgage(s):*

10. SELLER agrees to deliver to PURCHASER at CLOSING a certificate dated not more than _____Three_____ ( 3 ) days before CLOSING signed by the holder of each EXISTING MORTGAGE, in form for recording, certifying the amount of the unpaid principal and interest, date of maturity, and rate of interest. SELLER shall pay the fees for recording such certificate. If the holder of a mortgage is a bank or other institution as defined in Section 274-a, Real Property Law, it may, instead of the certificate, furnish an unqualified letter dated not more than _____Three_____ ( 3 ) days before CLOSING containing the same information. SELLER hereby states that any EXISTING MORTGAGE will not be in default at the time of CLOSING.

*Seller shall cooperate with purchaser request for assignment of any Existing mortgage to Purchaser's lender.*

-5-

©2021 Matthew Bender & Company, Inc., a member of LexisNexis.

**Purchaser's Lien:**
19. All money paid on account of this contract, and the reasonable expenses of examination of the title to the PREMISES and of any survey and survey inspection charges are hereby made liens on the PREMISES and collectable out of the PREMISES. Such liens shall not continue after default in performance of the contract by PURCHASER.

*but in + due*
*to a Seller*
*default.*

**Seller's Inability to Convey Limitation of Liability:**
20. If SELLER is unable to transfer title to PURCHASER in accordance with this contract, SELLER'S sole liability shall be to refund all money paid on account of this contract, plus all charges made for: (i) examining the title; (ii) any appropriate additional searches made in accordance with this contract; and (iii) survey and survey inspection charges. Upon such refund and payment, this contract shall be considered cancelled, and neither SELLER nor PURCHASER shall have any further rights against the other.

*Subject to*
*Due Diligence*
*Period in Rider)*

**Condition of Property:**
21. PURCHASER has inspected the buildings on the PREMISES and the personal property included in this sale and is thoroughly acquainted with their condition. PURCHASER agrees to purchase them "as is" and in their present condition subject to reasonable use, wear, tear and natural deterioration between now and CLOSING. PURCHASER shall have the right, after reasonable notice to SELLER, to inspect them before CLOSING.

**Entire Agreement:**
22. All prior understandings and agreements between SELLER and PURCHASER are merged in this contract. It completely expresses their full agreement. It has been entered into after full investigation, neither party relying upon statements made by anyone else that is not set forth in this contract.

**Changes Must be in Writing:**
23. This contract may not be changed or cancelled except in writing. The contract shall also apply to and bind the distributees, heirs, executors, administrators, successors and assigns of the respective parties. Each of the parties hereby authorize their attorneys to agree in writing to any changes in dates and time periods provided for in this contract.

**Singular Also Means Plural:**
24. Any singular word or term herein shall also be read as in the plural whenever the sense of this contract may require it.

*Continued on addendum or rider attached hereto.*

In Presence Of:

IN WITNESS WHEREOF, this contract has been duly executed by the parties hereto.

Veterans Road Holdings, LLC

_____         _____
By: David Berman, Managing Member               Social Security No./Fed. I.D. No.

_____         _____
                                                 Social Security No./Fed. I.D. No.

Alpha Equity Group, LLC

_____         46-4733115
William Segal                                     Social Security No./Fed. I.D. No.
or an entity to be formed prior to end of due diligence period

_____         _____
                                                 Social Security No./Fed. I.D. No.

Attorney for Seller: Mark S. Piazza, Esq.        Attorney for Purchaser: Elliot D. Steinmetz

Address: Jacobi, Sieghardt et.al                 Address: Rosenberg & Steinmetz PC
        235 Forest Ave                                    181 South Franklin Avenue, Suite 604
        Staten Island, New York 10301                    Valley Stream, New York 11581
Tel.: (718) 444-600    Fax: (718) 442-9804       Tel.: (212) 743-9904    Fax: (212) 743-9916

Closing of title under the within contract is hereby adjourned to _____, 20____, at
_____ o'clock at _____; title to be closed and
all adjustments to be made as of _____, 20____.

Dated: _____, 20____

For value received, the within contract and all the right, title and interest of the Purchaser
thereunder are hereby assigned, transferred and set over unto _____
and said assignee assumes all obligations of the Purchaser thereunder.

Dated: _____, 20____

................................................................
                                                        Purchaser

................................................................
                                                Assignee of Purchaser

November

**Rider to Contract of Sale** dated the 19th day of ~~October~~, 2021 by and between Veterans Road Holdings, LLC, hereinafter referred to as (the "Seller") and William Segal or an entity to be formed prior to the close of the due diligence period hereinafter referred to as (the "Purchaser");

1.    <u>DUE DILIGENCE PERIOD/PURCHASER'S RIGHT TO CANCEL</u>

A.    Notwithstanding anything to the contrary herein, during the period commencing on the date Purchaser's attorney receives a fully executed Contract of Sale and ending forty five (45) days from said date (the "Investigation Period"), Purchaser shall have the right to conduct any reasonable physical investigation of the premises which Purchaser's desire, provided that (i) such investigations shall be performed at no risk or expense to Seller and (ii) such investigations must not result in any material change in the physical condition of the Premises. In connection therewith, Purchaser and its designees shall be entitled to access to the Premises at all times during the Investigation Period upon twenty-four (24) hours' prior notice to Seller, and Seller shall have the right to accompany Purchaser and/or its designees during any such period of access. Throughout the Investigation Period, Purchaser shall have the right to conduct such investigations as Purchaser, in his sole discretion, may deem appropriate at the Premises, including, without limitation: (i)an environmental study to determine the presence of any hazardous substances on the Premises; (ii) any other feasibility study desired by Purchaser; and (iii) any and all legal engineering, zoning, title, municipal(including, building department)violation searches, hazardous to toxic waste, wetlands studies and environmental studies with respect to the Premises that Purchaser shall deem reasonably necessary. Purchaser shall have the right to terminate this Contract of Sale for any reason or no reason in his sole discretion by delivery of written notice received by Sellers attorney any time prior to the end of the last day of the Investigation Period (such notice may be delivered to Seller's counsel via facsimile at 718-442-9804 or email to mpiazza@lawfirmsi.com), followed by a duplicate notice mailed the same day via certified mail, return receipt requested, or by nationally-recognized overnight courier (with air-bill evidencing date of shipping)or delivered by hand the next day to Seller's attorney. All reports and results of any investigations obtained or conducted by Purchaser regarding the property shall be provided to Seller upon Seller's written request. Upon receipt of such notice by Seller prior to the end of the last day of the Investigation Period, this Contract of Sale shall terminate and Purchaser shall promptly be refunded the Deposit and all interest accrued thereon, if any. Seller shall authorize the real estate broker to provide and cooperate with any and all of Purchasers reasonable request for access to the premises and its environs.

B.    If Purchaser fails to terminate this Contract of Sale by notice delivered to Sellers's attorney prior to the end of the last day of the Investigation Period in accordance with paragraph 1(a), all down payment monies shall be nonrefundable, except upon Seller default or inability to close unless said inability to close is caused by Purchaser, Purchaser shall have no further right to terminate this Contract of Sale, and Purchaser shall accept and Seller shall deliver the Premises "as is" subject to and in accordance with this Contract of Sale.

C.    Purchaser agrees to indemnify, defend and hold Seller harmless from and against any and all losses, claims, costs, or expenses (including, without limitation, reasonable attorneys' fees and disbursements) caused by the acts or omissions of Purchaser and/ or Purchaser's designees, agents and employees at the Premises during the Investigation Period or at any time, including acts and omissions relating to (a) Purchaser's and/ or Purchaser's designees' ,agents' ,and employees' entry upon the Premises, (b) any

inspections, tests or other activities conducted thereon, or (c) any and all

other activities undertaken by Purchaser and/ or Purchaser's designees, agents and employees at the Premises. Nothing contained herein shall be deemed to impose any obligation, responsibility or liability on Purchaser as a result of the imposition of municipal violations or fines against Seller or the Premises imposed directly or indirectly as a result of such investigations, except that Purchaser shall not request an inspection of the Premises by any governmental authority for the purpose of determining whether any violations exist. The provisions of this Section shall survive the Closing or the termination of this Contract of Sale.

D.    In the event Seller requests delivery all reports and results of investigations same shall be deemed property of Seller.

E.    All reports, investigation results and any other information obtained by Purchaser shall be kept confidential and shall not be disclosed to any third parties, governmental authorities or agencies, or any other entity or person.

2.    **ADDITIONAL DOWN PAYMENT**

Within three (3) days of the conclusion of the due diligence period, and in the event Purchaser does not cancel this transaction as set forth in paragraph 1 above, an additional down payment of $750,000.00 shall be due and paid by check or wire of funds subject to collection payable to the Escrowee. Failure to pay this additional down payment shall be deemed a material breach of this contract and Seller shall have the right to terminate same by written notice. Upon termination by the Seller all down payment monies shall be nonrefundable and released to Seller without further notice to Purchaser.

3.    **CLOSING OF TITLE**

Closing of title shall take place at the office of Seller's attorney located at 235 Forest Ave Staten Island, NY 10301 or by escrow through the title company,on or before fifty (50) days from the conclusion of the due diligence period. Notwithstanding anything to the contrary contained herein closing of title must take place prior to December 20, 2021, time being of the essence. In the event Purchaser fails to timely close as set forth above Seller shall have the right to terminate this contract and all down payment monies shall be non-refundable and released to Seller without further notice to Purchaser.

4.    **SECTION 1031 EXCHANGE**

Seller reserves the right to include this transaction as part of an IRC, Section1031 tax deferred exchange for the benefit of Seller, at no cost, expense, or liability to Buyer. Buyer further agrees to execute any and all documents as are usually reasonably necessary in connection upon or subject to the completion of such exchange. Seller agrees to indemnify and hold Buyer free and harmless from any cost, expense or liability, including attorney's fees, resulting from Buyer's participation in such exchange.

5.  **ESCROW**

The down payment hereunder shall be deemed to be paid to Seller by payment thereof to the title company being Riverside Abstract, LLC who will be a signatory to this agreement for the sole purpose of accepting the escrow requirements set forth herein, to be held in escrow , until the earlier of (1) the delivery of the deed hereunder or (2) the earlier termination of this Contract, at which time said escrowee shall remit such down payment to the party then entitled thereto. The escrowee shall act, with respect so such payment as a stakeholder only and without compensation and shall not be liable for the payment of any interest or court costs in any action that may be brought to recover any sums held in escrow, or any part thereof, unless such escrowee shall fail or refuse to pay over any such sums pursuant to a judgment, order or decree that shall be final beyond possibility of appeal, and upon making such payment escrowee shall have no liability to Seller and Purchaser in connection with such deposit. In the event of a dispute among the parties to this agreement or other parties, as to their respective entitlement to the escrow deposit, the escrowee is authorized, upon five days' notice to the parties hereto, to deposit the escrow monies with a court of competent jurisdiction and upon such deposit shall be relieved from further liability and shall be removed as a defendant from any lawsuit brought in connection therewith.

6.  **DEFAULTS AND REMEDIES**

(a) If Purchaser defaults hereunder, Seller shall have the right to avail itself of all remedies available to it.

(b)
    If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance.

7.  **NOTICES**

Any notice or other communication ("Notice") shall be in writing and either;

(a)     sent by either of the parties hereto or by their respective attorneys who are hereby authorized to do so on their behalf or by the Escrowee, by registered or certified mail, postage prepaid, or;

(b)     delivered in person or by overnight courier, with receipt acknowledged, to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant to this paragraph. Each Notice mailed shall be deemed given on the third business day following the date of mailing the same, except that any notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be deemed given when delivered, or

(c)     Each Notice by fax shall be deemed given when transmission is confirmed by the sender's fax machine. A copy

of each Notice sent to a party shall also be sent to the party's attorney. The attorneys for the parties are hereby authorized to give and receive on behalf of their clients all Notices and deliveries. This contract may be delivered as provided above or by ordinary mail.

8.      **MARKETABLE TITLE**

Purchaser shall order title from a licensed New York State title insurance company within ten (10) days of the date Purchaser's attorney receives a fully executed copy of this contract by email. Written notice of objections to title shall be provided to Seller's attorney within twenty one (21) days of the date Purchaser's attorney receives a fully executed copy of this contract. Failure to timely provide said notice of objections to title shall be deemed a waiver of any objections. Delivery of title report to Seller's attorney shall  be considered sufficient notice of any objections to title contained therein. If the Seller shall be unable to convey insurable and marketable title subject to the matters herein excepted and set forth and in accordance with this agreement, the sole obligation of the Seller, except as specifically hereinafter otherwise provided, shall be to refund the Purchaser's down payment made hereunder, together with the actual net expense which the purchaser may have incurred in any title company for the examination of the title, not to exceed the sum of $400.00, and upon the making of such refund and reimbursement this agreement shall wholly cease by reason of this agreement, and the lien, if any, of the Purchaser against the premises shall wholly cease.  The Seller shall not be required to bring any action or proceeding or otherwise incur any expenses  above $100,000.00 to render the title to the premises marketable or to cure the defects asserted by the Purchaser.  The Purchaser may nevertheless accept such title as the Seller may be able to convey with reduction of the purchase price not to exceed $100,000.00 . The acceptance of a deed by the Purchaser shall be deemed to be full performance and discharge of every agreement and obligation on the part of the Seller to be performed pursuant to the provisions of this agreement, except those, if any, which are herein specifically stated to survive the delivery of the deed. If the Purchaser shall assert that the title is subject to defects or objections other than the matters herein excepted and set forth, the Seller shall at its option have the right to request an adjournment of the date herein fixed for delivery of the deed for a period not to exceed sixty (60) days the aggregate as the Seller may require to perfect the title and remove the objections asserted by the Purchaser.

Unpaid liens for taxes, and tax liens and assessments, if any, shall not be objections to the title, except that the Seller agrees that it will pay the same at the closing of title, and the Seller shall have the right to use the proceeds of this sale for such purposes, to the end and that the premises may be acquired by the Purchaser free and clear of such taxes and tax liens.

Notwithstanding anything to the contrary contained herein Seller shall be required to pay any mortgages, liens, judgments and violations caused by it.

9.      **CORPORATION TAXES**

Unpaid franchise tax of New York City General Corporation

Tax of any corporation in the chain of title shall not be an objection to title provided Seller deposits with the title company insuring title a reasonable sum to insure against collection of the same out of the premises.

10. **ADJUSTMENTS**

All adjustments, including taxes and interest at the maximum rate of interest allowed by law on the unpaid balance of the purchase price shall be as of the date set for closing of title.

11. **ERRORS AND OMISSIONS**

The parties agree that any arithmetical error made in computation at closing shall be corrected and property adjustments made if written notice thereof is given tot he other party or such party's attorney within30 days after closing, specifying the claimed error.

12. **"AS IS"**

The Purchaser has examined the premises agreed to be sold and is familiar with the physical condition thereof. The Seller has not made and does not make any representations or warranties as to the physical condition, expenses, operation, maintenance, the use to which the premises may be put, or any other matter or thing affecting or related to the aforesaid premises except as herein specifically set forth, and the Purchaser hereby expressly acknowledges that the Purchaser has inspected the premises and agrees to take the premises "AS IS."

13. **EXCEPTIONS TO TITLE**

The Premises are sold further subject to the following provided that title is not rendered uninsurable or unmarketable thereby:

(a)    Any state of facts an accurate survey would show so long as same does not affect current use or render title unmarketable or uninsurable.

(b)    Covenants, easements or consents of record, restrictions, zoning plans and regulations, if any affecting the premises, so far as same may now be in force and effect.

(c)    Minor encroachments, extensions, and variations from the record line of hedges, fences, sidewalks, curbs or retaining walls, driveways, stoops, area wells, cellar steps and/or doors, cornices, trim, eaves, gutters and fire escapes, if any upon street or highway and/or record property lines;

(d)    City Planning Commission, Board of Estimate, Zoning Lot, Homeowners and/or Condominium Association, sewage treatment plant/pumping station, and Building Department declarations and/or agreements, etc., provided same do not render title uninsurable;

(e)    Rights of record, if any, acquired by a utility company or municipality to maintain and operate lines, cables poles, boxes and transformers in and over or upon the premises;

(f)    Proposed, adopted or actual street openings and/or street widening and/or upon buildings on the premises.

(g)    Variations minor in nature between the record description herein and

| | |
|---|---|
| *Compliance with State and Municipal Department Violations and Orders:* | 11. a. SELLER will comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted in or issued by any governmental department having authority as to lands, housing, buildings, fire, health and labor conditions affecting the PREMISES at the date hereof. The PREMISES shall be transferred free of them at CLOSING and this provision shall survive CLOSING. SELLER shall furnish PURCHASER with any authorizations necessary to make the searches that could disclose these matters. |
| *Omit if the Property is not in the City of New York:* | b. All obligations affecting the PREMISES, incurred pursuant to the Administrative Code of the City of New York prior to CLOSING and payable in money shall be discharged by SELLER at CLOSING. This provision shall survive CLOSING. |
| *Installment Assessment:* | 12. If at the time of CLOSING the PREMISES are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and are to be paid by SELLER at CLOSING. |
| *Apportion-ments:* | 13. The following are to be apportioned as of ____12:00____ [a.m./p.m.] of the day before CLOSING: (a) Rents as and when collected. (b) Interest on EXISTING MORTGAGE(S). (c) Premiums on existing transferable insurance policies and renewals of those expiring prior to CLOSING. (d) Taxes, water charges and sewer rents, on the basis of the fiscal period for which assessed. (e) Fuel, if any. (f) Vault charges, if any. |
| | If CLOSING shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the old tax rate for the preceding period applied to the latest assessed valuation. |
| | Any errors or omissions in computing apportionments at CLOSING shall be corrected. This provision shall survive CLOSING. |
| *Water Meter Readings:* | 14. If there be a water meter on the PREMISES, SELLER shall furnish a reading to a date not more than ~~Sixty~~ 60 ~~30~~ ( ~~60~~ ) days before CLOSING date and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading. |
| *Allowance for Unpaid Taxes, etc.:* | 15. SELLER has the option to credit PURCHASER as an adjustment of the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less than ____Thirty____ ( 30 ) business days after CLOSING, provided that official bills therefor computed to said date are produced at CLOSING. |
| *Use of Purchase Price to Pay Encum-brances:* | 16. If there is anything else affecting the sale of which SELLER is obligated to pay and discharge at CLOSING, SELLER may use any portion of the balance of the purchase price to discharge it. As an alternative SELLER may deposit money with the title insurance company employed by PURCHASER and required by it to assure its discharge; but only if the title insurance company will insure PURCHASER'S title clear of the matter or insure against its enforcement out of the PREMISES. Upon request, made within a reasonable time before CLOSING, the PURCHASER agrees to provide separate certified checks as requested to assist in clearing up these matters. |
| *Affidavit as to Judgments, Bankruptcies Etc.:* | 17. If a title examination discloses judgments, bankruptcies or other returns against persons having names the same or similar to that of SELLER, SELLER shall deliver a satisfactory detailed affidavit at CLOSING showing that they are not against SELLER. |
| *Deed Transfer and Recording Taxes:* | 18. At CLOSING, SELLER shall deliver a certified check payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed, together with any required tax return. PURCHASER agrees to duly complete the tax return and to cause the check(s) and the tax return to be delivered to the appropriate officer promptly after CLOSING. |

tax map

(h)    Variations minor in nature between the record property line or lines, fences, walls and/or party walls and the record tax map; and

(i)    All open New York City Department of Building permits and/or applications; and

(j)    All violations that are the responsibility of a tenant.

14.    **SELLER'S VIOLATIONS**

In the event at time of closing there are open violations that are the Seller's responsibility same shall not be an objection to Purchaser timely closing. Seller shall, post closing, take all actions necessary to clear same. Purchaser shall fully cooperate with Seller and sign all required documents necessary for clearance of any such violations.

15.    **SELLER REPRESENTATIONS:**

(a)    At closing Seller shall provide executed assignments of each lease assigning same and the rents payable thereunder to Purchaser together with executed letters notifying tenants of the transfer of ownership and security deposits; and

(b) Seller at closing shall provide all original leases and all original tenant assignments thereof in its possession.

16.    **ESTOPPEL CERTIFICATES:**

Prior to closing Seller shall provide executed estoppel certificatesfrom all non-national tenants in the form used by Seller, a copy of which is attached hereto and made part hereof. Estoppels will be provided from National Tenant's in the form said Tenant's corporate office promulgates.

17.    **MERGER CLAUSE:**

The Contract of Sale and this Rider contain the complete, full and exclusive understanding by and between Purchaser and Seller with respect to the transaction contemplated herein. Any and all prior oral and/ or written communications shall be deemed to have been superseded and replace in their entirety by this Contract of Sale and this Rider.

18.    **CLOSING EXPENSES and TRANSFER TAXES**

Seller shall pay the New York City Real Property Transfer Tax and the New York State Real Estate Transfer Transfer Tax in addition to all other charges and fees required to be paid by Seller by the terms of this agreement and as customary under New York practice.

19.    **DOWNPAYMENT**

Upon conclusion of the due diligence period, and in the event

Purchaser does not cancel this transaction as set forth in paragraph 1 above, all down payment monies shall be nonrefundable and deemed the property of Seller except in case of Seller default or inability to close unless said inability to close is caused by Purchaser.

20.     LEASING DURING CONTRACT TERM

The parties agree that Seller shall continue to enter leases at the Shopping Center. Seller shall remain liable for any and all expenses associated with any new leases until the date of the closing. Any monies expended by Seller shall be added back as a direct refund to Seller on a dollar-to-dollar basis at closing. These expenditures shall include but are not limited to, architect, legal, leasing, construction, etc. After closing Purchaser shall assume responsibility for said expenses. The Seller will continue to make leasing decisions with participation from the Purchaser until such time as the additional deposit is made and both deposits are deemed "hard" at the conclusion of the due diligence period.

After the due diligence period has expired, and Purchaser is proceeding with this transaction, no new leases or LOI's shall be signed without Purchaser's written consent, which shall not be unreasonably withheld, except for the following which Purchaser consents to and authorizes and agrees to have included in any price adjustment calculations:

1) Nail Salon - 1,560 SF, $32.00 NNN, CAM $9.75 a foot, 7 months free rent (tenant responsible for build out) $8,233.06 in TA, landlord's work: electrical panel and working HVAC;

2) Asian Cuisine - 3,177 SF, $32.00 NNN, CAM $9.75 a foot, 7 months free rent (tenant is responsible for build out), $16,766.94 in TA, landlord's work: electrical panel, HVAC and installation of bifold store front;

3) Sensational Kids - 4,148 SF, $13.00 NNN, CAM $9.25, $10,000 in TA, 4 months' rent, landlord's work: vanilla box; and

4) Garden State Porcelain - 1,491 SF, $34.00 NNN, $9.75 CAM, 4 months free rent, no TA, landlord's work: vanilla box.

In the event title does not close on or before December 20, 2021 Seller shall have the right to enter into new leases of similar terms and conditions to those set forth above, as well as new leases containing similar terms and conditions in any leases consented to by Purchaser during the period of Purchaser approval set forth herein, without Purchaser's consent.

The Seller shall be entitled to fifteen (15%) percent of the agreed upon cap rate (7%) together with any monies expended by Seller which shall be added back as a direct refund to Seller on a dollar-to-dollar basis at closing a set forth above.   The sum total of any new leases shall be added to the purchase price and the contract amended to reflect same. In the event Purchaser discovers misrepresented or fabricated rent numbers or lease terms Purchaser shall be entitled to a commensurate price reduction calculated by using the formula set forth above

Example: If there was a lease that yielded 100k annually as the net operating income after all costs associated with its pro rata share (taxes, insurance, management, etc.) a 7% yield would be applied  to it to give it a gross value of $1,428,571.43. From there we would subtract the cost to build the space out for

them (as per their lease), the commission paid to the broker for the lease, the concession and rent abatements and ALL costs associated with the landlord requirement for the lease. Assuming all those costs total 400k, we would be left with a net value of $1,028,571.43 for the lease itself. Applying the 15% sharing agreement to the seller we would end at $154,285.71 as the seller's increase in the purchase price for the securement of the lease.

Veterans Road Holdings LLC New
York limited liability company

By:

**David Berman, Managing Member, Seller**

Alpha Equity Group, LLC

William Segal, Managing Member, Buyer

## PURCHASER'S RIDER

1.  Seller shall deliver to Purchaser prior to Closing a written estoppel certificate (and an SNDA if required by Purchaser's lender) from each commercial tenant at the Premises, in the form attached hereto In the event the closing is adjourned Seller will not be required to obtain an additional estoppel certificate from the commercial tenants..

2.  At Closing the following shall be delivered by the Seller:

    (i)     All tenant security deposits and other deposits shall be assigned to Purchaser with credit therefor against sums due at Closing.

    (ii)    a written agreement pursuant to which Seller shall assign to Purchaser, and Purchaser shall assume and agree to be bound by all obligations and liabilities of Seller under the Leases and otherwise with respect to the tenancies of the Premises, in form reasonably satisfactory to Seller and Purchaser, with respect to obligations which arise after Closing, subject to the further terms and conditions of this Agreement

    (iii)   to the extent the same are in Seller's possession or in the possession of Seller's managing agent, Seller shall deliver all original Leases and any amendments or extensions thereto, or true, accurate and correct copies of leases or occupancy agreements. If none exist, then a valid explanation as to why such doesn't exist and the understood terms of such occupancy.

    (ii) A valid certificate of occupancy for the Property.

    (iii) A notice to the tenants of the Property advising the tenants of the sale of the Property and transfer of any unapplied security deposits to Purchaser and directing that all future rents be sent to Purchaser or as Purchaser directs.

    (iv) All keys to and plans and specifications with respect to the Property in Seller's possession or control.

    (v) Seller shall pay or cause to be paid all costs and expenses for the following: (i) Seller's legal fees, (ii) relevant state and city/county transfer taxes and (iii) any and all other expenses (whether incurred prior to or after the Closing Date) as are set forth in this Agreement as Seller's responsibility and/or are incurred in connection with the type of transaction described herein and are typically paid by a seller.

3.  Seller to the best of its knowledge represents and warrants to Purchaser that the following are true and correct in all material respects as of the date hereof:

(a) The Property is currently being used as a retail shopping center with offices and drinking/eating establishments.

(b) To the best of Seller's knowledge, Seller has not received from any governmental authority any notices which have not been corrected or complied with requiring or calling attention to the need for any work, repairs, construction, alteration, or installations on or in connection with the Property, or asserting any violation of any applicable law, regulation, or other governmental requirement beyond what is shown in the public records.

(c) To the best of Seller's knowledge, Seller knows of no claim, litigation or other proceeding pending or threatened against Seller with respect to the Property, or any judgments, decrees or awards outstanding against Seller or the Property except as otherwise set forth herein except for currently pending personal injury actions.

(d) To the best of Seller's knowledge, no condemnation, zoning, or environmental regulation has been instituted or written plans of which has been received by Seller that would detrimentally affect the use, occupancy, or operation of the Property for its current approved purposes.

(e) Seller has full power and authority to enter into and perform this Contract and all documents, instruments and agreements entered into or to be entered into by it pursuant to this Contract and to carry out the transactions contemplated hereby. Seller agrees to provide such documents as Purchaser's title insurer shall reasonably require so as to evidence the right of the party conveying title to Purchaser to do so and for Purchaser to obtain insurable title at prevailing rates. This Contract is, and all documents to be executed by Seller and delivered to Purchaser at the Closing will be on the Closing Date, duly authorized, executed and delivered by Seller to Purchaser the legal, valid and binding obligations of Seller, enforceable in accordance with their respective terms and do not, at the time of Closing will not violate any provisions of any agreement, judicial order or any other thing to which Seller is a party to or by which Seller or the Property is subject or bound. Neither the execution and delivery of this Contract nor the consummation of the transactions contemplated by this Contract is subject to any requirement that Seller obtain any consent, approval or authorization of, or make any declaration or filing with, any governmental authority or third party except as otherwise set forth herein.

(f) There is not now pending, nor to the best of Seller's knowledge without independent inquiry, has there been any action, suit or proceeding against or affecting Seller of the Property before or by any federal or state court, commission, regulatory body, administrative agency or other governmental body, domestic or foreign, wherein an unfavorable ruling, decision or finding may reasonably be expected to have a material adverse effect on the business or prospects of or on the condition or operations of the Property (including the use and development of the Property for the Proposed development), or would interfere with Purchaser's or Seller's ability to consummate the transactions contemplated by this Contract or would in any case or in the aggregate have a material adverse effect, financial or otherwise, on the business or affairs of Seller.

(g) Seller is not a "foreign person" as defined by Internal Revenue Code §1445.

(h) There are no management, service, supply, maintenance or other agreements with respect to or affecting the Property and which would be binding upon Purchaser or the Property after the Closing except for snow removal .

(i) To the best of Seller's knowledge without independent inquiry, the Property is not in violation of any requirement of any building, zoning, environmental, health, safety, use, construction or any other

federal, state or local laws, ordinances, orders, requirements and regulations of any governmental authority having or planning to have jurisdiction over the Property (the "Laws and Regulations") and Seller has not received from anyone any notices or notes of violation (or claimed violations) of any Law or Regulations beyond what is shown in the public records.

G) There is currently pending any appeal with respect to real estate taxes for the Property. Any refunds or benefits received for any period prior to closing shall be credited to and belong to seller.

(k) Seller is solvent; a receiver has not been appointed for Seller or any of his assets or properties; nor is any application for receivership pending with respect to Seller, and no proceedings are pending by or against Seller in bankruptcy, reorganization or any similar law providing for relief of debtors or protection from creditors under any law.

(l) Seller has not entered into any presently effective contracts or agreements regarding the sale, conveyance, transfer or disposition of the Property (except for the within Contract). Seller has not given anyone, and no one possesses any, option to purchase or right of first refusal to purchase the Property.

(m)     There are no employees currently employed by Seller at the Premises who will remain employed following the Closing Date. There are no collective bargaining or union agreements in effect with respect to the Premises.

(n)     To the best of Seller's knowledge, without independent inquiry, any hazardous substances present on, in or under the property shall be those as to be determined by its new environmental consultant as hereinbefore set forth and any information in Seller's control or possession as to the use, generating, processing, storage, release, discharge, transportation, handling or disposing of any hazardous substances on or in connection with the property shall be disclosed to such environmental consultant. The terms "hazardous substances" shall mean and include any and all chemical, substance, material, waste, or component thereof which is now listed, defined or regulated as hazardous or toxic by statute, act, rule, regulation, requirement, order, directive, code or ordinance and all amendment thereto, pertaining in any way to health, safety and/or the environment.

(o) To the best of Seller's knowledge there is no underground oil storage tank on the property.

(p) Seller has received no notice from any insurance company which has issued a policy with respect to the Property or by any board of fire underwriters (or other body exercising similar functions) claiming any defects or deficiencies or requesting the performance of any repairs, alterations or other work, and Seller will promptly notify Purchaser of such notice or requirement if such notice is received prior to Closing.

(q) Seller has received no notice of any (i) assessments or charges for any public improvements have been made against the Property which remain unpaid, (ii) improvements to the Property or any roads or facilities abutting the Property have been made or ordered for which a lien, assessment or charge can be filed or made, or (iii) plans for improvements by any governmental or quasi-governmental authority which might result in a special assessment against the Property

(j) Seller has not received any notice of suspension or cancellation of any certificates of occupancy beyond what is shown in the public records.

(r) Any defective condition, structural or otherwise, in the buildings or other improvements on the

Property, or in the buildings' roof, heating, air conditioning, mechanical, plumbing or electrical systems and equipment of which Seller gains knowledge after the Effective Date shall be disclosed to Purchaser promptly.

(s) To the best of seller's knowledge all public utilities, including but not limited to, sewer, water, electric, gas, telephone, etc. required for the operation of the property, either enter the property thorough adjoining public streets or, if they pass through adjoining private land, do so in accordance with valid easements a shown in the public records; all public utilities have been installed and are operating and all installation and connection charges have been paid for in full. At the time of Closing, Seller shall furnish written assurances to Purchaser that no monies are due the utility companies furnishing water, electricity or sewer tothe property, and that to Seller's best knowledge, there are no restrictions upon such utility companies which would interfere with sewer, water and electricity services.

(t) Seller holds fee simple title to the Property. Seller is a duly existing limited liability company and has the power and authority to enter into this Agreement and to consummate the transactions herein contemplated.

    (u)    No brokerage or leasing commissions, landlord required improvements or construction, or other compensation is or will be due or payable by Purchaser to any person, firm, corporation or other entity with respect to or on account of any of the Leases or any extensions or renewals thereof except as entered into in the ordinary course of business.

    (v)    To the best of Seller's knowledge the Leases and all security deposits, rents and collections are in compliance with law and administrative regulations.

(w) If, during the period between the Effective Date and the Closing Date or earlier termination hereof, any event occurs or condition exists which renders any of the representations contained herein untrue or misleading in any material respect, Seller shall promptly notify Purchaser.

(x) From the date hereof through Closing, Seller shall operate the Property in accordance with the prudent and customary management practices for properties of this type and in compliance with the provisions of this Agreement.

(y) The Certificate of Occupancy delivered to Purchaser is a true copy of the original and such certificate has not been amended or modified in any respect and is sufficient to authorize the current use and physical structure of the Property subject to open DOB permits and applications and to facts shown in the public records. The Property has not been designated as a historical landmark.

(aa) Any mortgage or deed of trust existing against the Property will be satisfied at or before Closing by Seller, or at Purchaser's request assigned to Purchaser's lender if current lender will allow same.

(bb) To the best of Seller's knowledge he Property and the use thereof are in compliance with all applicable laws and governmental regulations, including hazardous materials laws and regulations and subject to facts shown in the public records.

(cc) To the best of Seller's knowledge there are no recorded or unrecorded contracts, agreements (written or oral) and/or options pertaining to or affecting the sale of the property, or any part thereof.

(dd) To the best of Seller's knowledge there are no violations or notices of violations affecting the property (including without limitation, violations or notices of violations with respect to the Americans With Disabilities Act or any lead paint regulations) and Seller has not received any notification from any governmentalagency requiring any repairs, replacements or alterations to the property beyond that shown in the public records.

Dated: ~~October~~ November 1, 2021

> **Veterans Road Holdings LLC New York limited liability company**
>
> By: _____
>
> **David Berman, Managing Member, Seller**
>
> Alpha Equity Group, LLC.
>
> _____
> William Segal, Member

**EXHIBIT B-2**

**THIS ASSIGNMENT OF REAL ESTATE CONTRACT** (this "Assignment") is made and entered into as of the 10th day of January, 2022, by and between **Alpha Equity Group, LLC** a New York limited liability company having a mailing address of 3021 Ave J Brooklyn, NY 11210 ("Assignor"), and **Veteran Holdings NY, LLC.,** having a mailing address at 670 Myrtle Ave #5151, Brooklyn, NY 11205 ("Assignee").

## WITNESSETH:

**WHEREAS,** Alpha Equity Group, LLC as purchaser (the "buyer") has entered into a real estate contract for the purchase of certain real property known as 2925-2965 Veteran Road West Staten Island, NY ("Property") from Veterans road Holdings, LLC as seller (the "Seller"); and

**WHEREAS,** Assignor has attached the Real Estate Contract of Sale as Exhibit "A" to this Assignment; and

**WHEREAS** Assignor has agreed to transfer, set over, assign and convey to Assignee all of Assignor's rights, privileges, duties and obligations in, to and under the Contract

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties agree as follows:

1. <u>Assignment of Contract</u>. Assignor hereby transfers, sets over, assigns and conveys unto Assignee all of Assignor's rights, privileges, duties and obligations in, to and under the above referenced Contract together with all of Assignor's rights, title and interest in and to the Property as well as all power and privileges conferred by the Contract.

2. <u>Representations and Warranties</u>. Assignor hereby represents and warrants to Assignee (a) that it has full power and authority to assign the Contract to Assignee, (b) that the Contract is in full force and effect and has not been modified or amended in any manner whatsoever and has not been exercised by the Assignor, and (c) all right, title and interest of Assignor in and to the Contract is free and clear of any and all claims, liens and encumbrances whatsoever and that it does warrant and will forever defend the same against the claim or claims of all persons whomsoever.

5. <u>Further Assurances</u>. Assignor covenants with Assignee and Assignee covenants with Assignor that each will execute or procure any additional documents necessary to establish the rights of the other hereunder.

6. <u>Counterparts</u>. This Assignment may be executed by the parties in counterparts, in which event the signature pages thereof shall be combined in order to constitute a single original document.

7. <u>Binding Effect</u>. This Assignment shall be binding upon and inure to the benefit of Assignor, Assignee and their respective successors and assigns.

8. <u>Notices.</u> On or after the execution of this Assignment, all Notices received by the Assignor relating to the Contract or the Real Estate Contract of Sale shall immediately be forwarded to 670 Myrtle Ave #5151, Brooklyn, NY 11205. Upon execution of this Assignment, the Assignor shall inform the Seller of the Assignment, provide a copy of same and direct the

1

seller to provide all Notices relating to the Contract or the Real Estate Contract of Sale to the Assignee hereunder at 670 Myrtle Ave #5151, Brooklyn, NY 11205.

9. <u>Applicable Law.</u> This Assignment shall be construed pursuant to the laws of the State of New York. Any dispute between the parties shall be resolved in a court of competent jurisdiction situate in Kings County, New York.

**IN WITNESS WHEREOF,** the parties have executed this Assignment as of the date set forth above.

Alpha Equity Group, LLC, Assignor

William Segal
Member

Veteran Holdings NY LLC, Assignee

Pearl Schwartz as Manager and as Trustee for
the SOUTH TO EAST 2021 TRUST

**EXHIBIT B-3**

## FIRST AMENDMENT TO CONTRACT OF SALE

THIS AMENDMENT TO CONTRACT OF SALE (this "Amendment") is made as of the ___ day of January, 2022 by and between VETERANS ROAD HOLDINGS, LLC, a New York limited liability company (hereinafter referred to as the "Seller") and ALPHA EQUITY GROUP, LLC, a New York limited liability company (hereinafter referred to as the "Purchaser").

RECITALS:

WHEREAS, pursuant to the terms of that certain Contract of Sale dated as of November 20, 2021 (the "Agreement") by and between Seller and Purchaser, Seller has agreed to sell to Purchaser and Purchaser has agreed to purchase from Seller, that certain property known as 2925-2965 Veterans Road West, Staten Island, New York; and

WHEREAS, Seller and Purchaser have agreed to amend the Agreement to address various agreed upon changes in the Agreement by executing this Amendment.

NOW, THEREFORE, in consideration of the premises herein, Seller and Purchaser hereby agree as follows:

1. **Name of Purchaser**. The Purchaser under the Agreement shall be a special purpose entity known as Veteran Holdings NY LLC, a New York limited liability company.

2. The deposit and additional deposit under the Agreement in the aggregate amount of $1,500,000.00 shall be released to Seller upon (i) execution of this Amendment and (ii) execution of a memorandum of contract by both Purchaser and Seller;

3. On January 13, 2022, Seller shall deposit an additional amount of $500,000.00 as part of the deposit under the Agreement to be released to Seller and credited against the purchase price at closing;

4. Simultaneous with the execution of this Agreement, a memorandum of contract shall be executed by both parties and recorded against the Property by Purchaser at Purchaser's sole cost and expense;

5. The Purchaser shall be responsible for all transfer taxes associated with the sale of the Property under the Agreement;

6. The agreement shall be amended to reflect a purchase price of $45,600,000.00

7. The Closing Date under the Agreement shall be amended to be March 1, 2022, time being of the essence;

8. Any news leases must be mutually agreed upon by Purchaser and Seller;

9. **Ratification**. Except as otherwise set forth herein, this Amendment shall not be deemed to modify any term, provision or condition of the Agreement, and the terms, provisions and conditions of the Agreement, as modified hereby, are hereby

reaffirmed, ratified and confirmed, and the Agreement shall continue in full force and effect. The recitals to this Amendment are hereby incorporated as if fully set forth herein at length.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Agreement.

10.    **Counterparts**. This Amendment (i) may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but all of which shall together constitute one and the same agreement, and (ii) may be executed by facsimile signatures (or by copies of physically signed documents exchanged via email attachments in PDF format or equivalent).

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties hereto have executed this Amendment as of the day and year first above written.

SELLER:

VETERANS ROAD HOLDINGS, LLC

By: _____
    Name: _David Berman_
    Title: Authorized Signatory _manager_

PURCHASER:

ALPHA EQUITY GROUP, LLC

By: _____
    Name: William J. Segal
    Title:  Member