UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

In re:                                                    Chapter 11

**VETERAN HOLDINGS NY LLC,**                    Case No:  22-40052 (ESS)

                                    Debtor.
----------------------------------------------------------X


<span style="color:blue">AMENDED </span>DISCLOSURE STATEMENT FOR
PLAN OF REORGANIZATION OF VETERAN HOLDINGS NY LLC




THIS DISCLOSURE STATEMENT IS BEING SUBMITTED TO THE
BANKRUPTCY COURT FOR FINAL APPROVAL ON _____, 2022, AT
_____:00 A.M., IMMEDIATELY PRIOR TO THE HEARING ON
CONFIRMATION OF THE DEBTOR'S PLAN OF REORGANIZATION.




ROBINSON BROG LEINWAND
    GREENE GENOVESE & GLUCK
P.C.
**Attorneys for the Debtor**
875 Third Avenue
New York, New York 10022
Tel. No.:  212-603-6300

Fred B. Ringel, Esq.
Clement Yee, Esq.

New York, New York

{0113677301137956.DOCX;42 }

1

February 8 14, 2022

## DISCLAIMER

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT (~~THE~~ "**DISCLOSURE STATEMENT**") IS INCLUDED ~~HEREIN FOR THE PURPOSES OF SOLICITING~~ TO SOLICIT ACCEPTANCES OF THE CHAPTER 11 PLAN OF REORGANIZATION OF VETERAN HOLDINGS NY LLC DATED FEBRUARY ~~8~~14, 2022 (AS MAY BE AMENDED, MODIFIED, OR SUPPLEMENTED FROM TIME TO TIME, THE "PLAN")~~, AND~~. IT MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN.[1]  A COPY OF THE PLAN IS ANNEXED HERETO AS **EXHIBIT A**. NO SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN MAY BE MADE EXCEPT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE.

ALL HOLDERS OF CLAIMS ARE ADVISED AND ENCOURAGED TO READ THE DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY ~~BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. IN PARTICULAR, ALL HOLDERS OF CLAIMS SHOULD CAREFULLY READ AND CONSIDER FULLY THE RISK FACTORS SET FORTH IN SECTION VI (CERTAIN OTHER FACTORS) OF THIS DISCLOSURE STATEMENT BEFORE VOTING TO ACCEPT OR REJECT THE PLAN~~. THE PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS ANNEXED TO THE PLAN AND THIS DISCLOSURE STATEMENT. IN THE EVENT OF ANY CONFLICTS BETWEEN THE DESCRIPTIONS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE TERMS OF THE PLAN, THE TERMS OF THE PLAN GOVERN.

**THE DEBTOR'S PROPOSED PLAN PROVIDES FOR PAYMENT IN FULL OF ALL CREDITOR CLAIMS WITH INTEREST. THUS, THE DEBTOR DOES NOT BELIEVE THAT ANY CLAIM OR INTEREST IS IMPAIRED BY THE TREATMENT PROPOSED BY THE PLAN.**

THE DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016(b) AND NOT NECESSARILY IN ACCORDANCE WITH OTHER NON-BANKRUPTCY LAW.

---

[1] Unless otherwise expressly set forth herein, capitalized terms used but not otherwise herein defined have the same meanings ascribed to such terms in the Plan.

{~~01136773~~01137956.DOCX;~~4~~2 }

CERTAIN STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING WITH RESPECT TO PROJECTED CREDITOR RECOVERIES AND OTHER FORWARD-LOOKING STATEMENTS, ARE BASED ON ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL BE REFLECTIVE OF ACTUAL OUTCOMES. FORWARD-LOOKING STATEMENTS ARE PROVIDED IN THIS DISCLOSURE STATEMENT PURSUANT TO THE SAFE HARBOR ESTABLISHED UNDER THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995 AND SHOULD BE EVALUATED IN THE CONTEXT OF THE ESTIMATES, ASSUMPTIONS, UNCERTAINTIES, AND RISKS DESCRIBED HEREIN.

AS TO CONTESTED MATTERS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT WILL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS DISCLOSURE STATEMENT ALSO WILL NOT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTOR AND DEBTOR IN POSSESSION IN THE DEBTOR'S CHAPTER 11 CASE. THE DEBTOR URGES EACH HOLDER OF A CLAIM OR INTEREST TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN ON SUCH HOLDER'S CLAIM OR INTEREST.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN, AND THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION STATED SINCE THE DATE HEREOF.

# I.

## <u>INTRODUCTION</u>

On January 12, 2022, Veteran Holdings NY LLC  commenced with the United States Bankruptcy Court for the Eastern District of New York a voluntary case pursuant to chapter 11 of title 11 of the United States Code. The Debtor's chapter 11 case is being administered under the caption In re Veteran Holdings NY LLC, Case No. 22-40052 (ESS)

On _____, 2022, the Bankruptcy Court conditionally approved this Disclosure Statement as containing adequate information of a kind and in sufficient detail to enable a hypothetical holder of an Allowed Claim to make an informed judgment whether to accept or reject the Plan. APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT, HOWEVER, CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN.

The purpose of ~~this~~a Disclosure Statement is to provide holders of Claims and holders of Existing Equity Interests entitled to vote to accept or reject the Plan with adequate information about (i) the Debtor's business and certain historical events, (ii) the Chapter 11 Case, (iii) the Plan, (iv) the rights of holders of Claims and Interests under the Plan, and (v) other information necessary to enable each Holder of a Claim entitled to vote on the Plan to make an informed judgment as to whether to vote to accept or reject the Plan. However, holders of Claims and Existing Equity Interests are not <u>impaired by the treatment the Debtor is proposing under its proposed Plan and accordingly would not be</u> entitled to vote on the Plan <u>in the event the Court finally approves this Disclosure Statement and confirms the Debtor's Plan</u> (see discussion at Section V of ~~the~~this Disclosure ~~statement~~Statement).

Pursuant to section 1125 of the Bankruptcy Code, the Debtor submits this Disclosure Statement to all holders of Claims against the Debtor ~~entitled to vote on the Plan~~ to provide information in connection with the solicitation of votes to accept or reject the Plan. The Disclosure Statement is also available to all holders of Claims against and Interests in the Debtor for informational purposes, including detailing the impact the Plan will have on such holders' Claims and Interests. The Disclosure Statement is organized as follows:

- Section I includes certain general information.

- Section II provides an overview of the Debtor's business.
- Section III [~~INTENTIONALLY OMITTED~~Intentionally Omitted]
- Section IV contains a summary of the Plan.
- Section V describes certain factors affecting the Debtor.
- Section VI discusses certain U.S. federal income tax consequences of the Plan.
- Section VII addresses confirmation of the Plan.
- Section VIII concludes this Disclosure Statement ~~and recommends that eligible Creditors vote to accept the Plan~~.

## A.    VOTING PROCEDURES

As set forth herein, Claims in Classes 1 and 2 and Existing Equity Interests in Class 3 are not impaired by the Plan. Accordingly, holders of Claims in Classes 1 and 2 and Existing Equity Interests in Class 3 are deemed to have accepted the Plan, and votes of holders of Claims in Classes 1 and 2 and Existing Equity Interests in Class 3 ~~will~~are not ~~be~~being solicited by the Debtor.

## B.    DISCLOSURE STATEMENT EXHIBITS

The following are exhibits to this Disclosure Statement.

- EXHIBIT A – Plan of Reorganization of Veteran Holdings NY LLC

- EXHIBIT B-1 – Veterans Holdings Contract of Sale

- EXHIBIT B-2 – Assignment of Contract of Sale dated January 10, 2022

- EXHIBIT B-3 – First Amendment to the Veterans Holding Contract of Sale

- EXHIBIT C – Veterans Center Purchase and Sale Agreement

- EXHIBIT D – Information Regarding Post-Effective Date Manager

## C.    THE DEBTOR'S PROFESSIONALS

The Debtor has retained Robinson Brog Leinwand Greene Genovese & Gluck P.C. ("RBL") as reorganization counsel to the Debtor.

## D.    IMPORTANT DATES

Please take note of the following important dates and deadlines with respect to the

{~~01136773~~01137956.DOCX;~~4~~2 }

Debtor's Plan:

| | |
|---|---|
| Deadline to file and serve any objection or response to the Plan ("Plan Objection Deadline") | _____, 2022 at __:___ _.m (prevailing Eastern Time) |
| Scheduled date and time for the commencement of the hearing to consider confirmation of the Plan ("Confirmation Hearing") | _____, 2022 at __:___ _.m (prevailing Eastern Time) |

E.    ~~BRIEF~~ BACKGROUND AND OVERVIEW OF THE PLAN [2]

The ~~Plan provides for the~~ Debtor ~~to purchase the Property from the Seller under the Veterans Holdings Contract of Sale and then sell the Property to the Purchaser under the Veterans Center Purchase and Sale Agreement and using the Sale Proceeds to pay the balance due under~~ the Veterans Holdings Contract of Sale and pay the Debtor's Claims in full. is a New York limited liability company and assignee to a contract to purchase the real property located at 2925-2965 Veteran Road West, Staten Island, New York.  Veteran Road Holdings, LLC ("Seller") currently own the Property.  The Property, also known as South Shore Commons, is a 51-unit retail strip mall.  Built in 2007, South Shore Commons encompasses six buildings and has as tenants Dunkin Donuts, Panera Bread, Carters, Verizon, and other commercial tenants. Additionally, there are also numerous office units in this mall.

F.    ~~SUMMARY OF DISTRIBUTIONS AND VOTING ELIGIBILITY~~

~~The following summary table briefly outlines the classification and treatment of Claims against and Interests in the Debtor under the Plan, and the voting eligibility of the holders of such Claims and Interests. As set forth in the Plan, the classification of Claims and Interests set forth herein will apply. The following summary table is qualified in its entirety by reference to the full text of the Plan.~~

---

[2] This summary is qualified in its entirety by reference to the Plan. Statements as to the rationale underlying the treatment of Claims and Existing Equity Interests under the Plan are not intended to, and will not, waive, compromise or limit any rights, claims, defenses, or causes of action in the event that the Plan is not confirmed. You should read the Plan in its entirety before voting to accept or reject the Plan.

{~~01136773~~01137956.DOCX;~~4~~2 }

Seller and Alpha Equity Group, LLC ("Alpha") entered into the Contract of Sale dated November 1, 2021 to sell the Property for the sum of $47,000,000. On January 6, 2020,[3] the Seller and Alpha executed the First Amendment to the Veterans Holdings Contract of Sale, which recognized the Debtor as the purchaser and adjusted and reduced the purchase price to $45,600,000. On January 10, 2022, Alpha countersigned the assignment of the Veterans Holdings Contract of Sale to the Debtor.

The Debtor filed this chapter 11 case to avoid defaulting under the Veterans Holdings Contract of Sale because Alpha did not give the Debtor sufficient advance notice when it entered into the First Amendment that the Debtor was required to fund an additional $500,000 deposit within 72 hours.

The Debtor believed that the right to acquire the Property pursuant to the Veterans Holdings Contract of Sale was valuable, and to avoid jeopardizing those rights, losing the $1,500,000 contract deposit which was to be credited at closing and proceed to closing without any further threat of contract termination by the Seller, the Debtor commenced this chapter 11 case.  Since the Debtor's filing, the Debtor has finalized the sale its membership interests to Veterans Center for $59,000,000. The $59,000,000 Sale Proceeds will be used to fund the assumption of the Veterans Holdings Contract of Sale and pay the balance of the purchase price, to pay the costs of the sale and to pay claims of creditors in full under the Plan, the fees owed to the Office of the United States Trustee and the estimated administrative expenses.  As of the filing of the Plan and Disclosure Statement, Veterans Center has deposited $500,000 into the escrow in accordance with the terms of the Veterans Center Purchase and Sale Agreement. Prior to the Confirmation Hearing, on February 21, 2022, Veterans Center is required to deposit an additional $1,000,000 into escrow with Debtor's counsel.

To effectuate the transfer of the Property to the Debtor, the Plan require two contemporaneous closings. At the closings, the Sale Proceeds from the Veterans

---

[3] The First Amendment is undated but Alpha's principal, William Segal informed the Debtor that the document was executed on January 6, 2022 although the Debtor was not presented with it until January 10, 2022.

Center Purchase and Sale Agreement will be used to pay the balance of the purchase price due under the Veterans Holdings Contract of Sale as well as fund the Plan as outlined above.

## III. [INTENTIONALLY OMITTED]

## IV.

## THE PLAN

### A. INTRODUCTION

This section of the Disclosure Statement summarizes the Plan, a copy of which is annexed as Exhibit A hereto. This summary is qualified in its entirety by reference to the provisions of the Plan, which provisions shall control in the event of any discrepancy with the descriptions contained in the Disclosure Statement.

In general, a chapter 11 plan divides claims and equity interests into separate classes, specifies the property that each class is to receive under the Plan, and contains other provisions necessary to implement the Plan.

Under the Bankruptcy Code, "claims" and "equity interests," rather than "creditors" and "equity holders," are classified because creditors and equity holders may hold claims and equity interests in more than one class. The treatment of claims and interests is set forth in the next section.

(i) *Background.- Contract to Purchase South Shore Commons, Staten Island.*

The Plan provides for the Debtor to assume its the Veterans Holdings Contract of Sale and acquire the Property from the Seller. Unfortunately, the relationship between the Seller and the Debtor's predecessor in interest, Alpha, were plagued by difficulties and multiple threats to terminate the valuable contract, such that the commencement of this case was deemed necessary by the Debtor to insure the assumption of the Veterans Holdings Contract of Sale by the Debtor would not be plagued by similar difficulties or unnecessary litigation that might jeopardize the contract or the Debtor's ability to close.

On November 1, 2021, the Seller and Alpha executed the Veterans Holdings Contract of Sale whereby Alpha agreed to purchase the Property for $47,000,000. The contract provided for a forty-five day due diligence period during which Alpha could cancel the Veterans Holdings Contract of Sale but that three business days

after the end of the due diligence period, Alpha was required to make an additional deposit of $750,000 if it did not cancel the agreement.

On December 16, 2021, with the closing deadline approaching, the parties were in the midst of negotiating an extension of the closing date and the deadline for Alpha to make the additional deposit. The negotiations were difficult because the Seller insisted on the immediate funding of the additional $750,000 deposit. Moreover, Alpha was in the middle of negotiations with the Debtor about the possibility of assigning the Veterans Holdings Contract of Sale to the Debtor in exchange for the Debtor arranging to advance the additional $750,000 deposit required under the contract. Ultimately, Alpha agreed to the Seller's demands when the Seller agreed to extend the December 20th closing date. Counsel for Alpha and the Seller exchanged emails on December 17, 2021, evidencing an agreement that they would extend the closing date provided for in the contract "to a date to be mutually agreed upon" provided that Alpha funded an additional $750,000 deposit into escrow. The Debtor borrowed those funds and made the advance into the escrow agent's account in contemplation of the Veterans Holdings Contract of Sale being assigned to it.

After Alpha made the additional $750,000 deposit into the escrow account held by Riverside Abstract Title Company, and while negotiations were ongoing between the Seller and Alpha to fix a new closing date (and negotiations were proceeding between Alpha and the Debtor to assign the Veterans Holdings Contract of Sale), with no prior warning, on December 27, 2021, the Seller's attorney sent a letter to Alpha and Riverside Abstract, claiming to terminate the contract of sale and giving notice to Riverside Abstract that it was "directed" to deliver the escrow funds to the Seller "immediately."

Another round of difficult negotiations took place over the next roughly 13 days. The Seller demanded that the $1,500,000 contract deposit be immediately released, and additional funds be deposited in exchange for an extension of the closing date. This dispute was resolved when Alpha and the Seller negotiated and entered into First Amendment to the Veterans Holdings Contract of Sale dated January ___, 2022.[4] The First Amendment substituted the Debtor as the purchaser, released the $1,500,000 contract deposit held by Riverside Abstract to the Seller, set March 1, 2022, as a new closing date and reduced the purchase price to $45,600,000.

Alpha and the Debtor had been negotiating to assign the Veterans Holdings Contract of Sale to the Debtor, and the assignment was pending but not yet been

---

[4] Although undated, the Debtor understands from William Segal, the Member of Alpha Equity Group LLC that the First Amendment was entered into on January 6, 2022.

{~~01136773~~01137956.DOCX;~~4~~2 }

countersigned by Alpha at the time the First Amendment was fully executed. While the Debtor's pre-petition counsel had made suggestions for changes to the First Amendment, the Debtor was not fully involved with drafting the document as Alpha was represented by its own counsel. The final draft of the First Amendment was not delivered to the Debtor until its counsel received it on or about January 10th or 11th when Mr. Segal, Alpha's Member, delivered a countersigned copy of the Assignment of the Veterans Holdings Contract of Sale along with the final version of the First Amendment. Segal was also delayed in delivering these documents to the Debtor because the First Amendment provided for execution of a memorandum of the contract for recording and Alpha's title company required additional information from the Seller in order to put the Memorandum in recordable form. Segal did not obtain that information until January 10th. The First Amendment also reduced the purchase price by $1,400,000 at Segal's request. While the price reduction is not attributable to any one provision of the First Amendment, as the document was an entire package deal, Segal did request the price reduction with a view towards enhancing Alpha's performance to its investors when the property was eventually stabilized, in the event the assignment was never finalized.

The First Amendment also required the Debtor to pay the Seller an additional $500,000 contract deposit on January 13, 2022. Alpha had not given the Debtor sufficient notice regarding the requirement that the additional contract deposit had to be paid on January 13, 2022, and the Debtor was unprepared to fund the deposit on such short notice. Given the acrimonious history between the Seller and Alpha and the fact that the Seller had already sought to terminate the Contract on December 27, 2021 after agreeing to extend the closing date, and that the Debtor could not immediately fund the additional $500,000 deposit, the Debtor did not want to find itself in potential litigation with the Seller over the possible loss of its valuable right under the contract as well as its $1,500,000 contract deposit. To avoid such a potential adverse result, and wanting to proceed to a closing under the Veterans Holdings Contract of Sale without further threats of termination or potential litigation, on January 12, 2022, the Debtor initiated this chapter 11 case.

Since the filing of the chapter 11 case, the Debtor has quickly finalized an agreement with Veterans Center whereby the Debtor will sell to Center 100% of the membership interests in the Debtor for $59,000,000 pursuant to the Veterans Center Purchase and Sale Agreement. Under that agreement, which will close either immediately before or simultaneously with the Debtor's acquisition of the Property, Veterans Center will acquire 100% of the membership interests in the Debtor for $59,000,000 and the proceeds of that sale would be utilized to (i) pay the Seller the sums necessary to cure all defaults and close under the Veterans Holdings Contract of Sale and thereby acquire the Property for approximately $45,600,000, (ii) pay approximately $2,195,000 in loan fees and closing

adjustments,[5] (iii) pay $1,682,014 to the Debtor's secured and unsecured creditors to satisfy their claims in full with interest, (iv) reserve $250,000 for the payment of US Trustee Fees, and (v) reserve $250,000 for payment of administrative costs and professional fees with the balance of approximately $9,272,985 being paid to the holders of the Existing Equity Interests.

(ii)    *Summary of Distributions and Voting Eligibility*

The following summary table briefly outlines the classification and treatment of Claims against and Interests in the Debtor under the Plan, and the voting eligibility of the holders of such Claims and Interests. As set forth in the Plan, the classification of Claims and Interests set forth herein will apply. The following summary table is qualified in its entirety by reference to the full text of the Plan.

| Class | Designation | Treatment | Approx. Allowed Amount[36] | Approximate Percentage Recovery[47] | Entitled to Vote |
|---|---|---|---|---|---|
| 1 | JBBNY Secured Claim | Unimpaired | $750,000 | 100% | No (presumed to accept) |
| 2 | General Unsecured Claims | Unimpaired | $46,361,778.00 | 100% | No (presumed to accept) |
| 3 | Existing Equity Interests | Unimpaired | n/a | 100% | No (presumed to accept) |

Section IV.B of this Disclosure Statement provides a more detailed description of the treatment of Claims and Interests under the Plan.

**H**

---

[5] The amount of the closing adjustment are estimated and cannot be known until closing.

[36]  The amounts set forth herein are estimates based upon the Debtor's books and records as of the Commencement Date. Actual allowed amounts will depend on, among other things, final reconciliation and resolution of all Claims, and the negotiation of cure amounts. Consequently, the actual allowed amounts may vary from the approximate amounts set forth herein. Secured Claims do **NOT** include post-petition interest and other amount allowable under section 506.

[47]  The approximate percentage recovery for each Class set forth in this Disclosure Statement is based upon certain assumptions that are subject to change, including completion of the Auction.

{01136773•01137956.DOCX;42 }

B. **CONFIRMATION HEARING**

Pursuant to section 1128 of the Bankruptcy Code, the Confirmation Hearing will be held on _____, 2022 at __:00 a.m. (Eastern Time) before the Honorable Elizabeth S. Stong at the United States Bankruptcy Court for the Eastern District of New York, 271 Cadman Plaza East, Brooklyn, New York 11201. Objections and responses to confirmation of the Plan, if any, must be served and filed as to be received on or before the Plan Objection Deadline _____, 2022 at 12:00 p.m. **(Eastern Time),** in the manner described in the order approving this Disclosure Statement (the "**Disclosure Statement Order**") and Section VII.B of this Disclosure Statement. The Confirmation Hearing may be adjourned from time to time without further notice except for the announcement of the adjournment date made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

II.

**OVERVIEW OF THE DEBTOR'S OPERATIONS**

The ~~Debtor is a limited liability company currently under contract, via an assignment, to purchase the real property located at 2925-2965 Veteran Roads West, Staten Island, New York.  The Property is currently owned by Veteran Road Holdings, LLC.  The Property, also known as South Shore Commons, is a 51-unit retail strip mall.  Built in 2007, South Shore Commons encompasses~~ its store-fronts over six buildings, including ~~Dunkin Donuts, Panera Bread, Carters, Verizon and more. Additionally, there are also numerous office units in this mall.~~

Seller and Alpha Equity Group, LLC entered into the Contract of Sale dated November 1, 2021 to sell the Property for a purchase price of $47,000,000. The Contract was subsequently amended to substitute the Debtor as the purchaser and reduce the purchase price to $45,600,000.

The Debtor filed this chapter 11 case to avoid defaulting under the contract to acquire the Property and potentially lose its rights, including its contract deposit. Since the Debtor's filing, the Debtor has been seeking sufficient funding to close on the sale of the Property under the Veterans Holdings Contract of Sale. South to East, the holder of the Debtor's Existing Equity Interest has entered into the Veterans Center Purchase and Sale Agreement to sell its Existing Equity Interests to Veterans Center for $59,000,000. The $59,000,000 Sale Proceeds will be used to fund the balance of the purchase price due under the Veterans Holdings Contract of Sale and payment of Claims under the Plan. As of the filing of the Plan and Disclosure Statement, Veterans Center has deposited $500,000 into the Disbursing Agent's escrow in accordance with the terms of the Veterans Center Purchase and Sale Agreement. Prior to the Confirmation Hearing, Veterans Center will deposit an additional. $1,000,000 into escrow.

In order to effectuate the transfer of the Property to the Debtor, the Plan proposes two contemporaneous closings under the Veterans Holdings Contract of Sale and the Veterans Center Purchase and Sale Agreement. At the Veterans Center Closing, the Sale Proceeds from the Veterans Center Purchase and Sale Agreement will be used to pay the balance of the purchase price due under the Veterans Holdings Contract of Sale.

## III. [INTENTIONALLY OMITTED]

## IV.

## THE PLAN

### A. INTRODUCTION

This section of the Disclosure Statement summarizes the Plan, a copy of which is annexed as Exhibit A hereto. This summary is qualified in its entirety by reference to the provisions of the Plan, which provisions shall control in the event of any discrepancy with the descriptions contained in the Disclosure Statement.

In general, a chapter 11 plan divides claims and equity interests into separate classes, specifies the property that each class is to receive under the Plan, and contains other provisions necessary to implement the Plan.

{01136773 01137956.DOCX;4 2 }

Under the Bankruptcy Code, "claims" and "equity interests," rather than "creditors" and "equity holders," are classified because creditors and equity holders may hold claims and equity interests in more than one class.

Statements as to the rationale underlying the treatment of claims and equity interests under the Plan are not intended to, and will not, waive, compromise or limit any rights, claims or causes of action in the event the Plan is not confirmed.

**THE DEBTOR URGES YOU TO READ THE PLAN IN ITS ENTIRETY.**

## BA. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

One of the key concepts under the Bankruptcy Code is that only claims that are "allowed" may receive distributions under a chapter 11 plan. This term is used throughout the Plan and the descriptions below.

In general, an "allowed" claim or an "allowed" equity interest simply means that the Debtor agrees, or in the event of a dispute, that the Bankruptcy Court determines, that the claim or equity interest, and the amount thereof, is in fact a valid obligation of the debtor. Section 502(a) of the Bankruptcy Code provides that a timely filed claim or equity interest is automatically "allowed" unless the debtor or other party in interest objects. However, section 502(b) of the Bankruptcy Code specifies certain claims that may not be "allowed" in bankruptcy even if a proof of claim is filed. These include, but are not limited to, claims that are unenforceable under the governing agreement between a debtor and the claimant or under applicable non-bankruptcy law, claims for unmatured interest, property tax claims in excess of the debtor's equity in the property, claims for services that exceed their reasonable value, real property lease and employment contract rejection damages in excess of specified amounts, late-filed claims, and contingent claims for contribution and reimbursement. In addition, Bankruptcy Rule 3003(c)(2) prohibits the allowance of any claim or equity interest that either is not listed on the debtor's schedules or is listed as disputed, contingent or unliquidated, if the holder has not filed a proof of claim or equity interest before the established deadline.

The Bankruptcy Code requires, for purposes of treatment and voting, that a chapter 11 plan divides the different claims against, and equity interests in, the debtor into separate classes based upon their legal nature. Claims of a substantially similar legal nature are not necessarily classified together, nor are equity interests of a substantially similar legal nature necessarily classified together. Because an entity may hold multiple claims and/or equity interests which give rise to different legal rights, the "claims" and "equity interests" themselves, rather than their

{01136773 01137956.DOCX;42 }

holders, are classified.

Under a chapter 11 plan, the separate classes of claims and equity interests must be designated either as "impaired" (affected by the Plan) or "unimpaired" (unaffected by the Plan). If a class of claims is "impaired," the Bankruptcy Code affords certain rights to the holders of such claims, such as the right to vote on the Plan, and the right to receive, under the chapter 11 plan, no less value than the holder would receive if the debtor were liquidated in a case under chapter 7 of the Bankruptcy Code.

Under section 1124 of the Bankruptcy Code, a lass of claims or interests is "impaired" unless the Plan (i) does not alter the legal, equitable and contractual rights of the holders, or (ii) irrespective of the holders' acceleration rights, cures all defaults (other than those arising from the debtor's insolvency, the commencement of the case or nonperformance of a nonmonetary obligation), reinstates the maturity of the claims or interests in the class, compensates the holders for actual damages incurred as a result of their reasonable reliance upon any acceleration rights, and does not otherwise alter their legal, equitable, and contractual rights.

Pursuant to section 1126(f) of the Bankruptcy Code, holders of unimpaired claims or interests are "conclusively presumed" to have accepted the Plan. Accordingly, their votes are not solicited. Under the Plan, all classes of Claims and Interests are unimpaired, and therefore, the all holders of Claims and Interests are "conclusively presumed" to have voted to accept the Plan.

Under certain circumstances, a class of claims or equity interests may be deemed to reject a plan. For example, a class is deemed to reject a plan under section 1126(g) of the Bankruptcy Code if the holders of claims or equity interests in such class do not receive or retain property under the Plan on account of their claims or equity interests. In this Plan, no class is conclusively presumed to have rejected the Plan.

## ~~C~~**B**.    UNCLASSIFIED CLAIMS

1. Administrative Expense Claims.

Administrative Expense Claims are the actual and necessary costs and expenses of administration during the Chapter 11 Cases pursuant to sections 328, 330, 363, 364(c)(1), 365, 503(b) or 507(a)(2) of the Bankruptcy Code.

Except to the extent that a holder of an Allowed Administrative Expense Claim and the Debtor agree to different treatment, the Debtor shall pay to each

holder of an Allowed Administrative Expense Claim, Cash in an amount equal to such Claim (plus statutory interest on such claim, if applicable), on or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date and (b) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; provided that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor shall be paid by the Debtor in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions.

Except as otherwise provided by a Final Order previously entered by the Bankruptcy Court (including the Bar Date Order), requests for payment of Administrative Expense Claims, other than requests for payment of Fee Claims, must be filed and served on the Debtor no later than the Administrative Expense Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order.

Holders of Administrative Expense Claims that are required to file and serve a request for payment of such Administrative Expense Claims and that do not file and serve such a request by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtor or its property, and such Administrative Expense Claims shall be deemed compromised, settled, and released as of the Effective Date. The Debtor must file and serve objections to Administrative Expense Claims on or before the Administrative Expense Claims Objection Bar Date.

2.    Fee Claims

All entities seeking an award by the Bankruptcy Court of Fee Claims shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is no later than thirty (30) days after the Effective Date. Such funds shall be disbursed from the Estimated Professional Fee Escrow only upon entry of a final order of the Bankruptcy Court allowing such Professional Fees.

The Debtor is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

3.    Priority Tax Claims.

{01136773 01137956.DOCX;4 2 }

17

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of the Effective Date, the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and the date such Allowed Priority Tax Claim is due and payable in the ordinary course.

## ~~D~~C.   CLASSIFICATION OF CLAIMS AND INTERESTS

All of the potential classes for the Debtor are set forth in the Plan.

**JBBNY Secured Claim (Class 1)**

(a)     Classification: Class 1 consists of the Allowed JBBNY Secured Claim.

(b)     Treatment: On the Effective Date, the holder of the JBBNY Secured Claim shall receive, in full and final satisfaction of such Claim, Cash in the unpaid  principal balance of the JBBNY Note amount plus interest at the rate specified in the JBBNY Note payable from the Sale Proceeds.

(c)     Voting: Class 1 is Unimpaired, and the holder of the JBBNY Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the holder of the Bordeaux Secured Claim is not entitled to vote to accept or reject the Plan.

**General Unsecured Claims (Class 2)**

(a)     Classification: Class 2 consists of General Unsecured Claims against the Debtor.

(b)     Treatment: Except to the extent that a holder of an Allowed General Unsecured Claim against the Debtor has agreed to less favorable treatment of such Claim, each holder of an Allowed General Unsecured Claim shall receive on the Effective Date, in full and final satisfaction of such Claim, Cash from the Sale Proceeds in an amount equal to the Allowed amount of such Claim, plus interest at the federal judgment rate payable from the Sales Proceeds.

(c)     Voting: Class 2 is Unimpaired, and holders of General Unsecured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of General Unsecured Claims are not entitled to vote to accept or reject the Plan.

**Existing Equity Interests (Class 3)**

(a)  Classification: Class 3 consists of Existing Equity Interests in the Debtor.

(b)  *Treatment*: On the Effective Date, the holder of the Class 3 Existing Equity Interests shall receive the consideration provided for under the Veterans Center Purchase and Sale Agreement, which after payment of all senior Claims under the Plan will be approximately $9,000,000.

(c)  Voting: Class 3 is Unimpaired, and holders of Existing Equity Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Existing Equity Interests are not entitled to vote to accept or reject the Plan.

## ~~E~~D.    MEANS FOR IMPLEMENTATION

1.  Implementation.

The Debtor shall take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan including but not limited to:  (a) assuming the Veterans Holdings Contract of Sale and  contemporaneously closing the sale of its membership interests under the Veterans Center Purchase and Sale Agreement in order to effectuate a sale of the Property from the Seller to the Debtor and (b) distributing the Sale Proceeds to pay Claims under the Plan.  The Confirmation Order shall contain appropriate provisions, consistent with section 1142 of the Bankruptcy Code, directing the Debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property by the estate or by any non-debtor third party, required by the Plan and to perform any act, including the satisfaction of any lien, that is necessary for the Consummation of the Plan.

2.  Other Transactions.

After the Effective Date, the Debtor may engage in any other transaction in furtherance of the Plan at the direction of the Post-Effective Date Debtor without any authorization by the Debtor's Existing Equity Interests.

3.  Withholding and Reporting Requirements.

(a)  Withholding Rights. In connection with the Plan, any party issuing any instrument or making any distribution described in the Plan shall comply all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements.

{01136773 01137956.DOCX;4 2 }

Notwithstanding the foregoing, each holder of an Allowed Claim or any other Person that receives a distribution pursuant to the Plan shall have responsibility for any taxes imposed by any Governmental Unit, including, without limitation, income, withholding, and other taxes, on account of such distribution. Any party issuing any instrument or making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

(b)  Forms. Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Disbursing Agent or such other Person designated by the Debtor (which entity shall   subsequently deliver to the Disbursing Agent any applicable IRS Form W-8 or Form W-9 received) an appropriate Form W-9 or (if the payee is a foreign Person) Form W-8, unless such Person is exempt under the tax Code and so notifies the Disbursing Agent. If such request is made by the Debtor or such other Person designated by the Debtor and the holder fails to comply before the date that is 180 days after the request is made, the amount of such distribution shall irrevocably revert to the Debtor and any Claim in respect of such distribution shall be discharged and forever barred from assertion against any Debtor and its respective property.

4.  Exemption From Certain Transfer Taxes.

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under this Plan as confirmed by the Court, (including an instrument of transfer executed in furtherance of Veterans Holding Contract of Sale and Veterans Center Purchase and Sale Agreement, as contemplated by the Plan,), shall not be subject to tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax or similar tax due on the sale  or transfer of the Property in connection with or in furtherance of the Plan as confirmed by the Court and the funding requirements contained herein and shall not be subject to any state, local or federal law imposing such tax and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

Additionally, any financing or refinancing within 24 months from the Effective Date, including, without limitation, to improve the Property, will also be considered a transaction in furtherance of the Plan and shall not be subject to tax under any law imposing a stamp tax, real property transfer taxes, real estate transfer taxes, mortgage recording tax or similar tax.

{01136773.01137956.DOCX;42 }

20

5.  Effectuating Documents; Further Transactions.

On and after the Effective Date, the Debtor is authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtor, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

6.  Preservation of Rights of Action.

Other than Causes of Action against an Entity that are waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Bankruptcy Court order, the Debtor reserves any and all Causes of Action. On and after the Effective Date, the Debtor may pursue such Causes of Action in its sole discretion. No Entity may rely on the absence of a specific reference in the Plan, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor will not pursue any and all available Causes of Action against them. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. Prior to the Effective Date, and on and after the Effective Date, the Debtor, shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding anything contained herein to the contrary, the settlement of any Claims and Causes of Action which are expressly to be settled by Confirmation of the Plan itself shall be resolved only by Confirmation of the Plan itself.

7.  Closing of the Chapter 11 Case.

After the Chapter 11 Case of the Debtor has been fully administered, the Debtor shall seek authority from the Bankruptcy Court to close such Debtor's Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## F.    GOVERNANCE

1. Post-Effective Date Management.

After the Effective Date, the ~~Debtor shall be designated the~~ Post-Effective Date Debtor ~~who shall be managed by~~ <u>has designated</u> Joyland Management, ~~who will such position as of the Veterans Center Closing~~<u>to manage the Debtor. Information regarding the background and experience of Joyland is set forth in Exhibit D to the Disclosure Statement.</u>.

2. Limited Liability Company Form.

On the Effective Date, the Debtor shall maintain its current entity form as a New York limited liability entity.

3. Certificate of Organization and By-Laws.

As of the Effective Date, only if necessary, the certificate of organization and by-laws of the Debtor shall be amended to the extent necessary to carry out the provisions of the Plan.

## G.    DISTRIBUTIONS.

1. Distribution Record Date.

As of the close of business on the Distribution Record Date, the transfer register for each of the Classes of Claims or Interests as maintained by the Debtor shall be deemed closed, and there shall be no further changes in the record of holders of any of the Claims or Interests. The Debtor shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date.

2. Date of Distributions.

Except as otherwise provided herein, the Debtor shall make distributions to holders of Allowed Claims no later than the Effective Date and thereafter, the Debtor shall from time to time determine the subsequent  Distribution Dates, if any. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

{0113677301137956.DOCX;42 }

The Debtor shall reserve an amount sufficient to pay holders of Disputed Claims the amount such holders would be entitled to receive under the Plan if such Claims were to become Allowed Claims. In the event the holders of Allowed Claims have not received payment in full on account of their Claims after the resolution of all Disputed Claims, then the Debtor shall make a final distribution to all holders of Allowed Claims.

Notwithstanding anything to the contrary in the Plan, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim plus any interest accruing on such Claim that is actually payable in accordance with the Plan.

3.  Delivery of Distributions.

In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Debtor has determined the then current address of such holder, at which time such distribution shall be made to such holder without Interest; provided, however, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the date the distribution is made. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Debtor automatically and without need for a further order by the Bankruptcy Court for distribution in accordance with the Plan and the Claim of any such holder to such property or interest in property shall be released, settled, compromised, and forever barred. The Debtor shall have no obligation to locate the current address for a returned distribution.

4.  Manner of Payment Under Plan.

At the option of the Debtor, any Cash payment to be made hereunder may be made by a check or wire transfer.

5. Minimum Cash Distributions.

The Debtor shall not be required to make any payment to any holder of an Allowed Claim on any Distribution Date of Cash less than $100; provided, however, that if any distribution is not made pursuant to Section 7.5 of the Plan, such distribution shall be added to any subsequent distribution to be made on behalf of the holder's Allowed Claim. The Debtor shall not be required to make any final distributions of Cash less than $50 to any holder of an Allowed Claim. If either (a)

all Allowed Claims (other than those whose distributions are deemed undeliverable hereunder) have been paid in full or (b) the amount of any final distributions to holders of Allowed Claims would be $50 or less and the aggregate amount of Cash available for distributions to holders of Allowed General Unsecured Claims is less than $2,500, then no further distribution shall be made by the Debtor and any surplus Cash shall be donated and distributed to an I.R.C. § 501(c)(3) tax-exempt organization selected by the Debtor.

6.  Setoffs.

The Debtor may, but shall not be required to, set off against any Claim, any Claims of any nature whatsoever that the Debtor may have against the holder of such Claim; provided that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claim the Debtor may have against the holder of such Claim.

7.  Distributions After Effective Date.

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

8.  Allocation of Distributions Between Principal and Interest.

Except as otherwise provided in this Plan, to the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

9.  Payment of Disputed Claims

As Disputed Claims are resolved pursuant to Section 8 of the Plan, the Debtor shall make distributions on account of such Disputed Claims as if such Disputed Claims were Allowed Claims as of the Effective Date. Such distributions shall be made on the first Distribution Date that is at least forty-five (45) days after the date on which a Disputed Claim becomes an Allowed Claim, or on an earlier date selected by the Debtor in the Debtor's sole discretion.

## H.   PROCEDURES FOR DISPUTED CLAIMS.

1.  Allowance of Claims.

{01136773 01137956.DOCX;4 2 }

After the Effective Date, the Debtor shall have and shall retain any and all rights and defenses that the Debtor had with respect to any Claim, except with respect to any Claim deemed Allowed under this Plan. Except as expressly provided in this Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Cases allowing such Claim.

2. Objections to Claims.

As of the Effective Date, objections to and requests for estimation of, Claims against the Debtor may be interposed and prosecuted only by the Debtor. Such objections and requests for estimation shall be served and filed (a) on or before the 60th day following the later of (i) the Effective Date and (ii) the date that a proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim, or (b) such later date as ordered by the Bankruptcy Court upon motion filed by the Debtor.

3. Estimation of Claims.

The Debtor may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

4. No Distributions Pending Allowance.

{01136773<span>01137956</span>.DOCX;42 }

25

If an objection to a Claim is filed as set forth in Section 8 of the Plan, no payment or distribution provided under the Plan shall be made on account of the disputed portion of such Claim unless and until such disputed portion of such claim is resolved by the Court.

5.    Resolution of Claims.

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Debtor shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or their estates may hold against any Person, without the approval of the Bankruptcy Court, the Confirmation Order, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith. The Debtor or its successor may pursue such retained Claims, rights, Causes of Action, suits or proceedings, as appropriate, in accordance with the best interests of the Debtor.

6.    Disallowed Claims.

All Claims held by persons or entities against whom or which the Debtor has commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549 and/or 550 of the Bankruptcy Code shall be deemed "disallowed" Claims pursuant to section 502(d) of the Bankruptcy Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan. Claims that are deemed disallowed pursuant to this section shall continue to be disallowed for all purposes until the Avoidance Action against such party has been settled or resolved by Final Order and any sums due to the Debtor from such party have been paid.

I.    **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**.

1.    Assumption of Executory Contracts and Unexpired Leases.

On the Effective Date, the Debtor shall be authorized to assume the Veterans Holdings Contract of Sale.  At the Veterans Holdings Closing, the balance of the purchase price shall be paid to the Seller as set forth in the Veterans Holdings Contract of Sale with funds from the Sale Proceeds.

2.    Reservation of Rights

Neither the exclusion nor inclusion of any contract or lease, nor anything

{01136773 01137956.DOCX;4 2 }

contained in the Plan, shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor's Estate have any liability thereunder. In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor shall have 60 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

**J.    CONDITIONS PRECEDENT TO THE EFFECTIVE DATE.**

1.    Condition to the Confirmation Hearing.

    (a)    The Debtor shall have filed a loan term sheet or other evidence of the Veterans Center ability to close under the Veterans Center Purchase and Sale Agreement.

    (b)    Veterans Center shall have deposited an additional $500,000 into 1,000,000 deposit under the Disbursing Agent's escrow Veterans Center Purchase and Sale Agreement. no later than three (3) days prior to the Confirmation Hearing February 21, 2022.

2.    Conditions Precedent to the Effective Date.

    The occurrence of the Effective Date of the Plan is subject to the following conditions precedent:

    (a)    the Bankruptcy Court shall have entered the Confirmation Order, the Confirmation Date shall have occurred and the Confirmation Order shall not be subject to any stay;

    (b)    all actions, documents and agreements necessary to implement and consummate the Plan, including, without limitation, entry into the documents contained in the Plan Supplement, if any, required to be executed prior to the Confirmation Date, each in form and substance reasonably satisfactory to the Debtor and the transactions and other matters contemplated thereby, shall have been effected or executed;

    (c)    all governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan, if any, shall be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose materially adverse conditions on such transactions; and

     (d)      all documents and agreements necessary to implement the Plan shall have (i) been tendered for delivery and (ii) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

2. Waiver of Conditions Precedent.

Each of the conditions precedent to the Effective Date in Section 10.1 of the Plan other than the condition set forth in section 10.1(a) of the Plan may be waived in writing by the Debtor.

3. Effect of Failure of Conditions to Effective Date.

If  the Confirmation Order is vacated due to a failure of a condition to the Effective Date to occur, (i) no distributions under the Plan shall be made and (ii) the Debtor and all holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date ever occurred.

## L.    EFFECT OF CONFIRMATION.

1. Vesting of Assets.

Upon Confirmation, the Debtor shall be authorized to assume the Veterans Holdings Contract of Sale.  The Veterans Holdings Closing and Veterans Center Closings shall occur contemporaneously so that the Property shall vest in the Post-Effective Date Debtor, free and clear of all liens, Claims and encumbrances, subject only to the mortgage granted in favor of the Post-Effective Date Debtor, if any.  As of the Veterans Holdings Closing, any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished.  Any other assets of the Debtor shall vest in the Post-Effective Debtor free and clear of all Liens, Claims and encumbrances.

2. Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released, settled, and compromised and all rights, titles, and interests of any holder of such mortgages,

deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall revert to the Debtor, with the exception of any mortgages granted in favor of the Post-Effective Date Debtor as part of the Veterans Center Purchase and Sale Agreement and Veterans Center Closing.

3.  Subordinated Claims

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtor reserves the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

4.  Binding Effect.

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Effective Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, the Debtor, and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan.

5.  Discharge of Claims and Termination of Interests.

Except as otherwise provided in the Plan, effective as of the Effective Date: (a) the rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor or any of their assets, property or Estates; (b) all Claims and Interests shall be satisfied, discharged and released in full, and the Debtor's liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (c) all Entities shall be precluded from asserting against the Debtor, the Debtor's Estate, their successors and assigns and their assets and properties any other Claims or Interests based upon any documents, instruments or any act or omission, transaction or other activity of any kind or nature that occurred before the Effective Date. Notwithstanding the foregoing, until all claims of the Lender have been indefeasibly paid in full, all of

{01136773 01137956.DOCX;4 2 }

29

the Lender's rights, including its contractual rights  pursuant to its Pledge shall remain in full force and effect.

6.  Term of Injunctions or Stays.

Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

**7.  Plan Injunction.**

**Except (i) as otherwise provided under Final Order entered by the Bankruptcy Court or (ii) with respect to the Debtor's obligations under the Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin with respect to any Claim held against the Debtor as of the date of entry of the Confirmation Order (i) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Debtor, from the Property, or from property of the Estate that has been or is to be distributed under the Plan, and (ii) the creation, perfection or enforcement of any lien or encumbrance against the Property and any property of the Estate that has been or is to be, distributed under the Plan.  Except as otherwise provided in the Confirmation Order, the entry of the Confirmation Order shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act to collect, recover or offset from the Debtor, from the Property, or from property of the Estate, any claim, any obligation or debt that was held against the Debtor by any person or entity as of the Confirmation Date except pursuant to the terms of this Plan. The entry of the Confirmation Order shall permanently enjoin all Creditors, their successors and assigns, from enforcing or seeking to enforce any such Claims.**

8.  Limitation of Liability

To the extent permitted under Section 1125(e) of the Bankruptcy Code, neither the Exculpated Parties  nor any of their respective officers, directors, or employees (acting in such capacity) nor any professional person employed by any of them, shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Plan Supplement, the Disclosure Statement, any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken

{01136773 01137956.DOCX;42 }

30

in connection with the Plan, provided that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her, or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement, except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts.   Nothing in this Section 11.8 shall limit the liability of the Debtor's professionals pursuant to Rule 1.8 (h)(1) of the New York State Rules of Professional Conduct. Nothing in the Plan or the confirmation order shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Debtor or any of its respective members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns, nor shall anything in the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Debtor or any of its respective members, officers, directors, employees, attorneys, advisors, agents, representatives and assigns for any liability whatever, including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in this Plan exculpate Debtor or any of its respective members, officers, directors, employees, attorneys, advisors, agents, representatives and assigns from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority.

9.   Release

Except as otherwise provided in the Plan, upon the Effective Date, in consideration of the Cash and other property to be distributed to or on behalf of the holders of Claims and Interests under the Plan, the Plan shall be deemed to resolve all disputes and constitute a settlement and release, between and among the Debtor, on the one hand, and each Creditor and Interest Holder, on the other, from any claim or liability, whether legal, equitable, contractual, secured, unsecured, liquidated, unliquidated, disputed, undisputed, matured, unmatured, fixed or contingent, known or unknown, that the Debtor, its Creditors or Interest Holder ever had or now have through the Effective Date in connection with their Claim or Interest (including, without limitation, any claims the Debtor may assert on its own behalf or on behalf of Creditors or Existing Equity Interests pursuant to sections 510 and 542 through 553 of the Bankruptcy Code, any claims Creditors

{01136773 01137956.DOCX; 42 }

or Existing Equity Interests may have asserted derivatively on behalf of the Debtor absent bankruptcy, any claims based on the conduct of the Debtor's business affairs prior or subsequent to the commencement of the Case or any claims based on the negotiation, submission and confirmation of the Plan).

10. Solicitation of the Plan.

As of and subject to the occurrence of the Confirmation Date: (a) the Debtor shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation.

10. Plan Supplement.

The Plan Supplement, if any, shall be filed with the Clerk of the Bankruptcy Court no later than three (3) days prior to the commencement of the Confirmation Hearing. Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours.

## M.  RETENTION OF JURISDICTION.

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

(a) to hear and determine motions and/or applications for the assumption or rejection of Executory Contracts or Unexpired Leases and the allowance, classification, priority, compromise, estimation or payment of Claims resulting there from;

(b) to determine any motion, adversary proceeding, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

(c) to insure that distributions to holders of Allowed Claims are accomplished as provided herein;

(d) to consider Claims or the allowance, classification, priority, compromise, estimation or payment of any Claim;

(e) to enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

{01136773.01137956.DOCX;42 }

(f) to enter the Confirmation Order and adjudicate any dispute related to such order and Closing;

(g) to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the Consummation, implementation or enforcement of the Plan, including the Confirmation Order, or any other order of the Bankruptcy Court;

(h) to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i) to hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred before the Confirmation Date;

(j) to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Purchase Agreement, or the Confirmation Order or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k) to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following Consummation;

(l) to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m) to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations of the Debtor's tax liability under section 505(b) of the Bankruptcy Code);

(n) to adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(o) to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(p) to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(q) to enter a final decree closing the Chapter 11 Case;

(r) to enforce all orders previously entered by the Bankruptcy Court;

(s) to recover all assets of the Debtor and property of the Debtor's Estate, wherever located; and

(t) to hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtor pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory.

{01136773 01137956.DOCX;4 2 }

## N.    MISCELLANEOUS PROVISIONS.

1. Payment of Statutory Fees.

On the Effective Date and thereafter as may be required, the Debtor shall pay all fees incurred pursuant to § 1930 of title 28 of the United States Code, together with interest, if any, pursuant to § 3717 of title 31 of the United States Code for the Debtor's case; provided, however, that after the Effective Date such fees shall only be payable with respect to the Debtor's Case until such time as a final decree is entered closing the Debtor's Case, a Final Order converting such case to a case under chapter 7 of the Bankruptcy Code is entered or a Final Order dismissing the Debtor's Case is entered.

2. Substantial Consummation.

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

3. Amendments.

(a)    Plan Modifications. The Plan may be amended, modified or supplemented by the Debtor in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code; provided that such amendments, modifications, or supplements shall be satisfactory in all respects to the Debtor. In addition, after the Confirmation Date, the Debtor may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

(b)    *Other Amendments.* Before the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court.

4. Revocation or Withdrawal of the Plan.

The Debtor reserves the right to revoke or withdraw the Plan, prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims

{01136773 01137956.DOCX;4 2 }

or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtor, the Debtor's Estates, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor, the Debtor's Estates, or any other Entity.

5.  Severability of Plan Provisions upon Confirmation.

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtor; and (3) nonseverable and mutually dependent.

6.  Governing Law.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto provides otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

7.  Time.

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

8.  Additional Documents.

{01136773_01137956.DOCX;42 }

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

9. Immediate Binding Effect.

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtor, the Seller, the holders of Claims and Interests, the Released Parties, the Exculpated Parties, and each of their respective successors and assigns.

10. Successor and Assigns.

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or permitted assign, if any, of each Entity.

11. Entire Agreement.

On the Effective Date, the Plan, the Plan Supplement, the Veterans Holdings Contract of Sale, the Veterans Center Purchase and Sale Agreement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

12. Notices.

All notices, requests and demands to or upon the Debtor to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Veteran Holdings NY LLC:
670 Myrtle Ave, #351
Brooklyn, New Yok 11205

{01136773_01137956.DOCX;42 }

36

Attn:  Pearl Schwartz

– and –

Robinson Brog Leinwand Greene Genovese & Gluck P.C.
875 Third Avenue, 9th Floor
New York, New York 10022
Telephone: (212) 603-6300
Facsimile: (212) 956-2164
Attention: Fred B. Ringel., Esq.

After the Effective Date, the Debtor shall have the authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, that they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtor is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

## V.

## CERTAIN RISK FACTORS AFFECTING THE DEBTOR

### A.    CERTAIN BANKRUPTCY LAW CONSIDERATIONS

Although the Debtor believes that the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion or that modifications of the Plan will not be required for confirmation or that such modifications would not necessitate resolicitation of votes.

### B.    ADDITIONAL FACTORS TO BE CONSIDERED

1. The Debtor Has No Duty to Update.

The statements contained in this Disclosure Statement are made by the Debtor as of the Commencement Date, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has been no change in the information set forth herein since that date. The Debtor has no duty to update this Disclosure Statement unless otherwise ordered to do so by the Bankruptcy Court.

2. No Representation Outside This Disclosure Statement Are Authorized.

{01136773 01137956.DOCX;4 2 }

No representations concerning or related to the Debtor, the Chapter 11 Case, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained in, or included with, this Disclosure Statement should not be relied upon by you in arriving at your decision.

3.  No Legal or Tax Advice Is Provided to You by This Disclosure Statement.

The contents of this Disclosure Statement should not be construed as legal, business, or tax advice. Each holder of a Claim or Interests should consult his, her, or its own legal counsel and accountant as to legal, tax, and other matters his, her, or its Claim or Interest.

This Disclosure Statement is not legal advice to you. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to confirmation of the Plan.

4. No Admission Made.

Nothing contained in the Plan will constitute an admission of, or be deemed evidence of, the tax or other legal effects of the Plan on the Debtor or on holders of Claims or Interests.

5. Failure to Identify Litigation Claims or Projected Objections.

No reliance should be placed on the fact that particular litigation claim or projected objection to a particular Claim or Interest is, or is not, identified in this Disclosure Statement. The Debtor may seek to investigate, file, and prosecute Claims and Interests and may object to Claims or Interests after the Confirmation or Effective Date of the Plan irrespective of whether this Disclosure Statement identifies such Claims or Interests or objections to such Claims or Interests.

6. No Waiver of Right to Object or Right to Recover Transfers and Assets.

The vote by a holder of a Claim or Interest for or against the Plan does not constitute a waiver or release of any claims, causes of action, or rights of the Debtor (or any entity, as the case may be) to object to that holder's Claim or Interest, or recover any preferential, fraudulent, or other voidable transfer of assets, regardless of whether any claims or causes of action of the Debtor or its Estate are specifically or generally identified in this Disclosure Statement.

{01136773 01137956.DOCX;4 2 }

38

7.  Information Was Provided by the Debtor and Was Relied Upon by the Debtor's Advisors.

The Debtor's advisors have relied upon information provided by the Debtor in connection with the preparation of this Disclosure Statement. Although the Debtor's advisors have performed certain limited due diligence in connection with the preparation of this Disclosure Statement, they have not independently verified the information contained in this Disclosure Statement.

## VI.

## CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES

The following summary of certain U.S. Federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the particular circumstances pertaining to each holder of an Allowed Claim. Each holder of an Allowed Claim is urged to consult his, her or its own tax advisors. This summary does not cover all potential U.S. federal income tax consequences that could possibly arise under the Plan and does not address the Plan's U.S. federal income tax consequences for any holder of an Allowed Claim that is a partnership (or other pass-through entity) or otherwise subject to special tax rules.

The Debtor has not requested any ruling from the Internal Revenue Service or any other taxing authority with respect to such matters nor will the Debtor, with respect to the federal income tax consequences of the Plan, obtain any opinion of counsel.  Consequently, there can be no assurance that the treatment set forth in the following discussion will be accepted by the IRS.  The Debtor offers no statements or opinions that are to be relied upon by the creditors as to the treatment of creditors' claims under the Plan.  Matters not discussed in this Disclosure Statement may affect the tax consequences of the Plan on any particular holder of a Claim.

This summary is based upon the laws in effect on the date of this Disclosure Statement and existing judicial and administrative interpretations thereof, all of which are subject to change, possibly with retroactive effect. Holders of Allowed Claims should consult their own tax advisors as to the Plan's specific federal, state, local and foreign income and other tax consequences.

The tax consequences to Creditors will differ and will depend on factors specific to each Creditor, including but not limited to: (i) whether the Claim (or

{01136773_01137956.DOCX;42 }

portion thereof) constitutes a claim for principal or interest; (ii) the origin of the Claim; (iii) the type of consideration received by the Creditor in exchange for the Claim; (iv) whether the Creditor is a United States person or foreign person for tax purposes; (v) whether the Creditor reports income on the accrual or cash basis method; and (vi) whether the Creditor has taken a bad debt deduction or otherwise recognized loss with respect to a Claim.

**THERE ARE MANY FACTORS WHICH WILL DETERMINE THE TAX CONSEQUENCES TO EACH CREDITOR. FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX, AND IN SOME CASES, UNCERTAIN. THEREFORE IT IS IMPORTANT THAT EACH CREDITOR OBTAIN HIS, HER OR ITS OWN TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH CREDITOR AS A RESULT OF THE PLAN.**

**THE DISCUSSION HEREIN IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY CREDITOR FOR THE PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED ON A TAX PAYER. THE DISCUSSION HEREIN WAS WRITTEN TO SUPPORT THE TRANSACTIONS DESCRIBED IN THIS DISCLOSURE STATEMENT. EACH CREDITOR SHOULD SEEK ADVICE BASED UPON THE CREDITOR'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

## VII.

## CONFIRMATION OF THE PLAN

### A.    CONFIRMATION HEARING

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after appropriate notice, to hold a hearing on confirmation of a chapter 11 plan. The Bankruptcy Court has scheduled the Confirmation Hearing to commence on _____, 2022 at ___:00 a.m. (Eastern Time). The Confirmation Hearing may be adjourned from time-to-time by the Debtor or the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or any subsequent adjourned Confirmation Hearing.

### B.    OBJECTIONS

Section 1128 of the Bankruptcy Code provides that any party in interest may object to the confirmation of a plan. Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

{01136773 01137956.DOCX;42 }

40

Any objection to confirmation of the Plan must be in writing, must conform to the Bankruptcy Rules and the Local Bankruptcy Rules for the Bankruptcy Court, must set forth the name of the objector, the nature and amount of Claims or Interests held or asserted by the objector against the Debtor's estate or property, the basis for the objection and the specific grounds therefore, and must be filed with the Bankruptcy Court, with a copy to the chambers of The Honorable Lisa G. Beckerman, United States Bankruptcy Court for the Eastern District of New York, 271 Cadman Plaza East, Brooklyn, New York 11201, together with proof of service thereof, and served upon the parties listed below so as to be received no later than the Plan Objection Deadline of _____, 2022 at 5:00 p.m. (Eastern Time):

| Counsel to the Debtor: | Office of the United States Trustee |
|---|---|
| Robinson Brog Leinwand Greene Genovese & Gluck P.C.<br>875 Third Avenue, 9th Floor<br>New York, New York 10022<br>Telephone: (212) 603-6300<br>Attention: Fred B. Ringel | 201 Varick Street<br>Suite 1006<br>New York, NY 10014<br>Attn: Jeremy Sussman, Esq. |

**UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

## C.     REQUIREMENTS FOR CONFIRMATION OF THE PLAN

1. Requirements of Section 1129(a) of the Bankruptcy Code.

a. **General Requirements**

At the Confirmation Hearing, the Bankruptcy Court will determine whether the following confirmation requirements specified in section 1129 of the Bankruptcy Code have been satisfied:

(i)     The Plan complies with the applicable provisions of the Bankruptcy Code.

(ii)    The Debtor has complied with the applicable provisions of the Bankruptcy Code.

(iii)   The Plan has been proposed in good faith and not by any means proscribed by law.

(iv)    Any payment made or promised by the Debtor or by a person issuing securities or acquiring property under the Plan for services or for costs

and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved or is subject to the approval of the Bankruptcy Court as reasonable.

(v)    The Debtor has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a plan with the Debtor, or a successor to the Debtor under the Plan, and the appointment to, or continuance in, such office of such individual is with the interests of creditors and equity holders and with public policy.

(vi)    With respect to each Class of Claims or Interests, each holder of an Impaired Claim or Impaired Interest either has accepted the Plan or will receive or retain under the Plan on account of such holder's Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if the Debtor was liquidated on the Effective Date under chapter 7 of the Bankruptcy Code. See discussion of "Best Interests Test" below.

(vii)    Except to the extent the Plan meets the requirements of section 1129(b) of the Bankruptcy Code (discussed below), each class of Claims or Interests has either accepted the Plan or is not impaired under the Plan.

(viii)    Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the Plan provides that administrative and priority claims will be paid in full on the Effective Date.

(ix)    At least one class of impaired claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a claim in such class.

(x)    Confirmation of the Plan is not likely to be followed by the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan. See "Feasibility Analysis" below.

(xi)    All fees payable under section 1930 of title 28, as determined by the Bankruptcy Court at the hearing on confirmation of the Plan, have been paid or the Plan provides for the payment of all such fees on the Effective Date of the Plan.

b. **Best Interests Test.**

As noted above, the Bankruptcy Code requires that each holder of a Claim or Interest either (i) accepts the Plan or (ii) receives or retains under the Plan property

{0113677301137956.DOCX;42 }

of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on the Effective Date. This requirement is referred to as the "best interests test."

The so-called "best interest" test requires that each impaired Creditor and impaired Interest Holder either (a) accepts the Plan or (b) receives or retains under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such entity would receive or retain if the Debtor was to be liquidated under chapter 7 of the Bankruptcy Code.  No class of Claims is Impaired pursuant to the Plan.  The Plan provides for payment in Cash in full to all classes of Claims.

The Liquidation Analysis is a comparison of (i) the estimated recoveries for Creditors and Interest holders of the Debtor that may result from the Plan and (ii) an estimate of the recoveries that may result from a hypothetical chapter 7 liquidation. The Plan provides for payment in full to each class of  allowed claims. Accordingly, the Debtor believes that the Plan provides Creditors with at least as much as they would be entitled to receive in a chapter 7 liquidation.

c. **Feasibility Analysis**

The Bankruptcy Code requires that a debtor demonstrate that confirmation of a plan is not likely to be followed by liquidation or the need for further financial reorganization unless contemplated by the Plan. For the Plan to be confirmed, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor unless such liquidation is set forth in the Plan. This Plan calls for contemporaneous closings under the Veterans Holdings Contract of Sale and Veterans Center Purchase and Sale Agreement.  The Sale Proceeds from the Veterans Center Purchase and Sale Agreement will be used to fund the balance of the purchase price due under the Veterans Holdings Contract of Sale at the Veterans Holdings Closing.  Prior to the Confirmation Hearing, Veterans Center will evidence proof of its ability to close on the Veterans Center Purchase and Sale Agreement which will provide the Sale Proceeds that will fund payments under the Plan.

Additionally, to be included in the Plan Supplement are ~~5~~six year projections that show the Debtor's ability to operate the Property after the Effective Date.

2. Alternative to Confirmation and Consummation of the Plan.

The Debtor has evaluated several alternatives to the Plan. After studying these alternatives, the Debtor has concluded that the Plan is the best option for the

Debtor and its estate and will maximize recoveries to parties-in-interest—assuming Confirmation and Consummation of the Plan. If the Plan is not confirmed and consummated, the alternatives to the Plan is would be for the Debtor to propose a different Plan or to seek a liquidation of the Debtor under chapter 11 or chapter 7 of the Bankruptcy Code.

# VIII.

## <u>CONCLUSION</u>

The Debtor believes that confirmation and implementation of the Plan is in the best interests of all Creditors

Dated:  February ~~8~~14, 2022
       New York, New York

                       VETERAN HOLDINGS NY LLC
                       By:  SOUTH TO EAST 2021 TRUST,
                       Managing Member

                       By:<u>/s/ Pearl Schwartz        </u>
                       Trustee

Document comparison by Workshare 10.0 on Monday, February 14, 2022 10:56:00 AM

| Input: | |
|---|---|
| Document 1 ID | file://\\app01v\docs\CLIDOCS\104423\0000\01136773.DOCX |
| Description | 01136773 |
| Document 2 ID | file://\\app01v\docs\CLIDOCS\104423\0000\01137956.DOCX |
| Description | 01137956 |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 96 |
| Deletions | 62 |
| Moved from | 37 |
| Moved to | 37 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 232 |